TAAKE, Respondent, v. TAAKE, Appellant.

*No. 40 (1974). Argued September 3, 1975.—*
*Decided October 2, 1975.*
(Also reported in 233 N. W. 2d 449.)

For the appellant there was a brief and oral argument by *Stephen B. Schneider* of Madison.

For the respondent there was a brief by *Strub, Woodworth & Quincey,* attorneys, and *Kenneth J. Quincey* of counsel, all of Beaver Dam, and oral argument by *Kenneth J. Quincey.*

BEILFUSS, J. On October 31, 1966, the plaintiff-respondent, E. Robert Taake, was granted an absolute divorce from the defendant-appellant, Barbara A. Taake, upon the ground of cruel and inhuman treatment. From the findings of fact and judgment on file and a part of the record on appeal, it appears the parties had been married about twelve years. They had three minor children—two of their own and an adopted child. The plaintiff-husband was and still is a physician and surgeon; the defendant-wife was a housewife. The parties resided in Beaver Dam. Pursuant to stipulation of the parties, the court awarded the custody of the children to the wife and required a support money payment of $550 per month by the plaintiff-husband. As a division of estate, the wife was awarded the home of the parties, the household goods, her personal effects and an automobile. In addition, she was awarded alimony in the amount of $200 per month.

On February 6, 1968, based upon a stipulation of the parties, the judgment was amended to provide that the

husband have custody of the children, and the provision for support money payments was deleted.

Shortly thereafter the defendant sold the house in Beaver Dam and moved to an apartment complex in Sun Prairie. She lived there for about a year and then moved to an apartment in Madison, where she lived until December, 1971. She worked intermittently as a personnel worker.

During the year 1971, the defendant Mrs. Taake, met Lyle Fink. Fink was divorced from his wife and was employed as a maintenance painter for the Madison school system. Fink was negotiating for the purchase of a home on School Road in Madison. For a period of four to five weeks prior to actual occupancy of the School Road home, Fink lived with Mrs. Taake in her Madison apartment.

In December of 1971 both Mr. Fink and Mrs. Taake moved into his newly purchased home on School Road and both were still living there at the time of the hearing in this matter in May of 1973.[1] The arrangements were that she was to pay him $25 per month rent and pay for a part of the groceries, and do at least a part of the housework. She had a separate bedroom. Mrs. Taake has been unemployed a part of the time due to alleged emotional problems. Fink suffered an injury while at work, has received some workmen's compensation benefits but is unemployed.

Mrs. Taake admits having occasional sexual relations with Fink and failing to correct persons when they refer to her as Mrs. Fink, although she has not affirmatively identified herself as Fink's wife. Her name does appear as Barbara Fink in a city directory.

---

[1] An affidavit filed after this appeal had been taken indicates Mrs. Taake, late in 1973, moved to the home of Mrs. W. A. Fink of Fond du Lac. This fact was not before the trial court, not a part of the record, and cannot be considered in this appeal.

Fink testified he considered Mrs. Taake to be his wife but later changed his testimony to the effect that they were very, very good friends. Mrs. Taake and Mr. Fink have not married at any time.

In September of 1972, the respondent Robert Taake, ceased making the monthly $200 alimony payments and in May of 1973 petitioned the court for an order amending the judgment to terminate alimony.

As stated, the order amending the judgment expunged the alimony arrearages, terminated alimony and barred future alimony.

In a memorandum decision the trial court found that Mrs. Taake and Lyle Fink had a de facto marriage relationship and that Mrs. Taake had and was engaging in misconduct of such a nature so as to require a termination of her former husband's obligation to pay her alimony.

The trial court concluded that Mrs. Taake should not be permitted to enjoy both the benefits of her de facto marriage relationship with Lyle Fink and the benefit of alimony from her former husband; and that to permit a divorced woman to do so might dissuade her from remarriage. The trial court also concluded that Mrs. Taake's legal misconduct was the kind of misconduct which this court has heretofore recognized as warranting a change or elimination of alimony.[2]

An award of alimony is authorized by sec. 247.26, Stats. It provides, in part, as follows:

"**Alimony, property division.** Upon every judgment of divorce or legal separation, the court may, subject to s. 247.20, further adjudge for a limited period of time to either party such alimony out of the property or income of the other party for support and maintenance, except no alimony shall be granted to a party guilty of adultery not condoned, . . . The court may also finally divide and

---

[2] *Weber v. Weber* (1913), 153 Wis. 132, 140 N. W. 1052; *Haritos v. Haritos* (1925), 185 Wis. 459, 202 N. W. 181.

distribute the estate, both real and personal, of either party between the parties and divest and transfer the title of any thereof accordingly, after having given due regard to the legal and equitable rights of each party, the length of the marriage, the age and health of the parties, the liability of either party for debts or support of children, their respective abilities and estates, whether the property award is in lieu of or in addition to alimony, the character and situation of the parties and all the circumstances of the case ; . . ."

Sec. 247.32, Stats., provides an award of alimony may be revised after a judgment. The section is, in part, as follows :

"**Revision of judgment.** After a judgment providing for alimony or other allowance for a spouse and children, or either of them, . . . as aforesaid the court may, from time to time, on the petition of either of the parties and upon notice to the family court commissioner, revise and alter such judgment respecting the amount of such alimony or allowance and the payment thereof, . . . and may make any judgment respecting any of the said matters which such court might have made in the original action, . . ."

Sec. 247.38, Stats., provides, in part, that an alimony award can be completely annulled upon remarriage :

"**Judgment revoked on remarriage.** . . . After a final judgment of divorce has been rendered, the court, upon the application of the party paying alimony, on notice to, and on proof of the marriage, after such final judgment, of the party receiving such alimony, shall by order modify such final judgment and any orders made with respect thereto, by annulling the provisions of such final judgment or orders, or of both, directing payment of such alimony."

Two earlier Wisconsin cases, although perhaps dicta, have given consideration to revision of alimony based upon subsequent misconduct of the divorced spouse.[3]

---

[3] Counsel for both parties cite several cases from other jurisdictions dealing with the problem. While these are instructive we are not persuaded by them because we are dealing with our statute.

In *Weber v. Weber, supra,* the court stated at page 138:

". . . On the other hand, if the wife, without the fault of the husband and without any adequate excuse or palliation, deliberately chooses a life of shame and dishonor, has no other equitable claim upon property in the hands of the husband, and he is compelled by his daily toil to earn the money paid to her, the court may make the misconduct of the wife the ground for cutting off all alimony, or for reducing the same, as may in its discretion seem just and equitable under all the circumstances of the case. Our statute, sec. 2369, Stats., prescribes no grounds upon which a judgment for alimony may be modified. It wisely leaves that to the judgment of the court. The considerations that may legitimately influence such judgment are so varied and complex that legislative and judicial wisdom alike refrain from any attempt to enumerate them. This much, however, may be said: the courts of our state do not permit vice to flaunt its banner before them unchallenged. When it appears, its nature and extent may be inquired into, and if justice so demands, it may be made the ground of equitable relief in the allowance of alimony."

In *Haritos v. Haritos, supra,* the following statement appears at page 464:

"It will be noted that we have dealt only with the issues raised upon the record made in the court below. It is recognized that the statute denies alimony in a judgment for divorce to a wife guilty of adultery. Upon proof of adulterous conduct subsequent to the judgment of divorce, it is appropriate that the court take into consideration such conduct in continuing or disallowing alimony. If the defendant sees fit to make application for a modification of the judgment in this respect, or to prove adulterous conduct on the part of plaintiff as a reason for purging his contempt, he should be accorded that opportunity. The order appealed from will be affirmed accordingly without prejudice to the right of the defendant to interpose further defenses to the order to show cause."

Counsel for Mrs. Taake contends that, because there is no remarriage here and Wisconsin does not recognize

common-law marriages, there is no statutory authority to decrease or eliminate alimony based on misconduct subsequent to the divorce. He also argues that *Weber* and *Haritos, supra,* should not be followed because modern moral standards condone relationships such as those of Lyle Fink and Mrs. Taake. An obvious corollary of this argument that because a divorced woman has greater freedom and opportunity for self-employment courts should be hesitant in awarding alimony. Neither of these arguments furnish an adequate answer.

The general rule, often stated, is that a provision for alimony will not be changed except upon a positive showing of a change of circumstances and especially so when originally based upon agreement or stipulation of the parties.

Mrs. Taake contends the change of circumstances must relate only to change of the financial circumstances of the parties.

We acknowledge that a divorced wife owes no duty of sexual fidelity to her former husband. However, her cohabitation with another man can be acknowledged as a change of circumstances affecting her former husband's responsibility to provide alimony for her support. The manner and extent of the cohabitation and circumstances should be considered in determining whether alimony payments are to be changed.

In this case there are several changed circumstances that can be considered. Mrs. Taake was given a substantial division of estate, including the home and household furniture of the parties for the obvious reason that it was going to be used as the home for the minor children. Further, because she was awarded the children, her opportunity for supporting herself was limited. She stipulated that the custody be transferred to the husband and sold the house. These were material changes in the circumstances that the court considered when the original

award of alimony was made. Her cohabitation with Lyle Fink was not an occasional indiscretion but continuous cohabitation with arrangements for joint support.

We believe this change of circumstances was sufficient to permit the trial court to expunge the delinquencies in alimony payments and to amend the judgment to delete the provision for alimony. We conclude the trial court did not abuse its discretion in these respects and those parts of the order must be affirmed.

The order also barred any future alimony. This we think goes too far. If, at a subsequent hearing, it appears that Mrs. Taake is not married, is not cohabiting in the manner set forth above, and other circumstances warrant a resumption of alimony in some degree, the court should not be powerless to act. That part of the order barring future alimony must be reversed.

*By the Court.*—Order affirmed in part, reversed in part. No costs to be taxed.

HEFFERNAN, J. *(dissenting).* In Wisconsin it is the rule that, upon divorce, a husband has a continuing obligation to support his former wife in the manner to which she was accustomed. *Radandt v. Radandt* (1966), 30 Wis. 2d 108, 140 N. W. 2d 293. The reason for the rule is apparent from *Weihert v. Weihert* (1953), 265 Wis. 438, 61 N. W. 2d 890. The former husband has the duty to furnish a divorced wife nourishment or sustenance.

There may well be good reasons to conclude that, in this day of equal rights, in cases where both parties have the capacity to be self-supporting, the entire concept of alimony should be re-examined. Suffice it to say that alimony serves the public interest where, as here, it is necessary for the maintenance of one party to the divorce and without which the dependent former spouse would become a public charge.

*Miner v. Miner* (1960), 10 Wis. 2d 438, 103 N. W. 2d 4, holds that, where a divorce decree grants alimony, that

decree is res adjudicata and will not be disturbed unless there is a material or substantial change in circumstances. This is particularly true where, as here, the alimony award was pursuant to the agreement of the parties.

*Miner* demonstrates that, since alimony is for the purpose of providing post-divorce support, the change in circumstances that must be proved hinges upon the changed needs or changed financial resources of the parties.

*Balaam v. Balaam* (1971), 52 Wis. 2d 20, 187 N. W. 2d 867, written by the author of the majority opinion in the instant case, stands indisputably for the proposition that a divorced husband who seeks to have alimony payments reduced has a heavy burden of proof if he is to disturb what has been decided. *Balaam* points out that, "Alimony and support money are, as a generalization, fixed on the basis of the needs of the wife and children and the ability of the husband to pay." (p. 25)

*Jackson v. Jackson* (1962), 16 Wis. 2d 61, 113 N. W. 2d 546, put the burden of proof to show changed financial circumstances upon the party seeking to upset the original decree.

Additionally, this court has held that the alimony should not be awarded or adjusted for punitive purposes. *Foregger v. Foregger* (1970), 48 Wis. 2d 512, 180 N. W. 2d 578; *Tonjes v. Tonjes* (1964), 24 Wis. 2d 120, 128 N. W. 2d 446.

Alimony can be justified on one ground only—the obligation for the husband, in the usual case, to support his former wife in the manner to which she was accustomed during marriage. *Sholund v. Sholund* (1967), 34 Wis. 2d 122, 148 N. W. 2d 726; *Jordan v. Jordan* (1969), 44 Wis. 2d 471, 171 N. W. 2d 385; *Tonjes, supra.*

It is in the public interest that alimony usually be paid, for without such post-divorce provision for support, there

is a substantial likelihood that a divorced spouse would become a public charge.

Bearing in mind this overriding purpose of alimony, what are the facts of this case? Dr. Taake, a Beaver Dam physician, whose ability to pay his divorced wife, the mother of his children, the sum of $200 per month for her support is unquestioned, petitioned the court to be relieved of his legal obligation solely because of his former wife's alleged misconduct.

There was no proof that Dr. Taake could not pay the amount previously decreed, nor was there any proof that Barbara Taake's financial circumstances had changed so that the alimony payments were not necessary for her maintenance.

Rather, the facts indisputably show that, at the time of the hearing, she was ill, was unable to work, and was unable to pay her rent.

The record shows that approximately two years after the divorce, she became acquainted with Lyle Fink. Fink stated that he took her into his home because she was running out of money and could not keep up with her expenses. In response to a question asking why he took her into his home, he said he felt sorry for her and stated:

"[A]s a kid years ago if I saw a dog running around the street in a good rain or so, I would try to give it protection . . . I don't think I did so wrong in offering her a place to get under a roof."

The situation of Fink and Barbara Taake is more to be deplored in our society than to be blamed. He is unemployed and is not able to contribute substantially to Barbara's support. In fact, she has been paying him rent. The relationship was one that arose out of mutual economic necessity—a necessity that the record shows continues in respect to Barbara Taake.

Yet, the record gave no consideration to the underlying purpose of alimony—the necessity for support and maintenance—nor to the rule in Wisconsin that has been followed without exception in considering the modification of an alimony award, that financial circumstances must be considered in every case.

It was admitted that Fink and Barbara had intercourse on several occasions, that they lived in the same house, that Barbara on no occasion held herself out as the wife of Fink, but on occasion had failed to correct persons who addressed her as Mrs. Fink. There was evidence that her mail was received under the name of Barbara Taake, not Barbara Fink. No neighbors were called as witnesses to testify that they believed that Fink and Barbara Taake were apparently living in a marital, rather than in an illicit, relationship.

On the basis of this evidence, however, the trial judge concluded that a de facto marriage existed between Fink and Barbara Taake. Under the statutory law of Wisconsin, only a remarriage bars alimony as a matter of law. Sec. 247.38, Stats. Hence, only if it could be said that Barbara Taake had remarried would the record support the legal conclusion to terminate the alimony.

Clearly, the relationship between Barbara Taake and Lyle Fink was not a marriage sanctioned by the law of this state. This state specifically outlaws de facto or common-law marriages. The law, for obvious public-policy reasons, does not clothe a legally unsanctioned male-female cohabitative relationship with any of the legal protections of a marriage. No legal relationship ever arose between Barbara and Fink except that of landlord and tenant. The trial judge's characterization of the relationship as a de facto marriage is without significance except as a shibboleth on which to predicate a desired result. In states where a common-law marriage is recognized, it is indeed true that a common-law marriage would, if proved, terminate the obligation to pay

alimony just as a de jure marriage would. The reason for that is, of course, that in a common-law marriage there is the manifestation that the relationship is permanent and that each party to it assumes the reciprocal obligations of marriage including the obligation of support and fidelity. *Bowman v. Bowman* (1956), 163 Neb. 336, 344, 79 N. W. 2d 554.

The relationship that the trial judge considered in this case was, however, only a temporary expedient. A true common-law marriage requires the common-law husband to support the wife, and the need for alimony for a divorced wife would be supplanted by the obligation of the common-law husband to support. In such circumstances the divorced husband ought to be relieved of his obligation. In the instant case no obligation was assumed by Fink to support Barbara Taake. The facts that might be pertinent in the event of a common-law remarriage do not appear in this case.

The trial judge abused his discretion when he gave the same legal effect to the relationship between the parties as he would have to a legally recognized marriage.

He abused his discretion when he seized on the empty shell of a temporary relationship to justify the termination of alimony without considering the question of the continued need for the support of Barbara Taake. He abused his discretion when he ignored the undisputed fact of record that Barbara Taake was a necessitous person, who should be supported by her former husband and not by public welfare, to which, the record shows, she had been forced to resort for assistance.

It should also be pointed out that Dr. Taake had no standing to raise the question of alimony termination with the court. He had defaulted on his alimony payment for a period of six months prior to his request for modification. The procedure for the modification of alimony is equitable in nature. Dr. Taake came to the court technically in contempt of it and, under the clean hands

doctrine, should not have been heard until he had purged himself of default.

The trial judge also found that the defendant's misconduct had caused her to forfeit her right to alimony.[1] He made the finding that Barbara Taake and Fink were "guilty of fornication" and "lewd and lascivious conduct." This finding was made without due process, and is wholly inappropriate in a noncriminal case. Neither Barbara Taake nor Fink were afforded any of the protections of the criminal law. To the extent that the testimony in this proceeding would justify any criminal characterization of their conduct, the evidence was wholly inadmissible. They were not charged with a crime and were not advised of their right against self-incrimination. The finding of criminal conduct was clear and prejudicial error. If the rights of the public are to be vindicated when persons indulge in legally unsanctioned sex acts, the remedy is in the criminal law. They ought not be characterized as criminals unless a prosecutor, in the exercise of his discretion, concludes that a criminal action is in the public interest, the parties are afforded the rights of criminal defendants, and the state assumes its duty to show guilt beyond a reasonable doubt.

It was irrelevant to these proceedings and constituted an abuse of judicial discretion to brand these two people as criminals when they had not been adjudged so by the criminal process.

The trial judge relied upon the 1913 case of *Weber v. Weber* (1913), 153 Wis. 132, 140 N. W. 1052, for the proposition that the wife's misconduct in this case warranted the termination of alimony. Unfortunately, the trial judge, Dr. Taake's counsel on this appeal, and the majority opinion omit relevant language of *Weber* and omit a recitation of the facts on which *Weber* is based.

---

[1] As a general rule, misconduct of an ex-wife cannot be the sole ground justifying a modification of alimony. *See:* 2A Nelson, *Divorce and Annulment* (2d ed.), p. 92, sec. 17.19.

*Weber* does not hold that post-divorce alimony can be eliminated solely as the result of the divorced wife's misconduct.

In *Weber* the husband, who sought to have the alimony terminated, was compelled to bring the alimony arrearages up to date and the court ordered a final property division in lieu of alimony. Moreover, *Weber* did not involve the post-divorce modification of alimony. It modified the divorce judgment within the current term of the court and while it still had jurisdiction of the original judgment.

The trial court record in *Weber* reveals that the trial judge made explicit findings that the wife was an ablebodied woman, twenty-four years of age, of good education, capable of earning her own living, and, in addition, living with her parents. Hence, it is clear that the trial court decision affirmed in *Weber* was based upon proper evidence—the respective financial needs of the parties—evidence that was totally overlooked in the present case.

The majority opinion correctly recognizes that the language of *Weber*, relied upon by the trial judge, was mere dicta and was not dispositive of this case.

In erroneously interpreting the *Weber* dicta as a rule of law, the trial judge committed an error of law that impelled his incorrect conclusion.

In addition, the quotation from *Weber* is taken out of context by the trial judge and the majority opinion. The portion quoted in the majority opinion indeed appears in the text of *Weber*, but counsel failed to invite the attention of this court to the crucial phrase that appears immediately prior to the quoted text. That phrase requires a discretionary criterion that must be considered in every modification of alimony case—the financial status of the wife.

The omitted phrase points out that, even where there has been a lapse from virtue by the divorced wife, a

"court may well refuse to modify the amount of alimony" if it appears that "the wife is without any means of her own and without the ability to earn a livelihood." *Weber, supra,* page 138.

Additionally, *Weber* reveals itself to be a slender reed of precedent when that opinion concludes, "But in this case it cannot be said that there was any reduction of alimony." (p. 138) It reasoned that, since the original judgment was still within the jurisdiction of the court term, the court had the authority to decree a final property division in lieu of alimony and was not effecting a modification.

*Haritos v. Haritos* (1925), 185 Wis. 459, 202 N. W. 181, relied upon by the trial court and quoted in the majority opinion, furnishes even less satisfactory precedent than *Weber.* The question of misconduct was at no time raised as an issue in the case. The sole question was whether the parties could by contract amend an alimony provision. It was claimed by the wife that she had signed an agreement to reduce the alimony because of threats of her ex-husband that he would have her prosecuted criminally for misconduct. The alleged misconduct was not at issue in the case and its effect was not argued by the parties.

Accordingly, it appears that the instant case was disposed of at trial, and now by this court, on facts that are not relevant to the modification of alimony and also upon a rule of law—that misconduct alone will suffice to modify alimony—not heretofore recognized in Wisconsin.

The majority conjectures that "there are several changed circumstances that can be considered." Perhaps such proof could have been adduced, but it was not. Clearly these "changed circumstances" were not considered by the trial judge.

We have repeatedly stated that we review the exercise of discretion by a trial judge. We do not substitute our

discretion for the judge at trial in a case such as this. Be that as it may, the fact that Barbara Taake received a portion of the estate nine years ago is irrelevant now. The evidence is clear that she is presently penniless. True, also, she was originally given custody of the children, but when that custody was taken away from her the sum of $550 per month that she had theretofore been receiving for the support of the children was also terminated; but what evidence is there that the fact that she no longer has the children is such a change in circumstances that demonstrates she no longer needs support or should warrant that Dr. Taake now escape his legal obligation. Moreover, the conclusion that Fink and Barbara Taake had arrangements "for joint support" is irrelevant to the needs of Barbara Taake. It is probative rather of the fact that the alimony was inadequate. There was no evidence of any continuing or permanent obligation of Fink to support Barbara Taake; and only that proof, in light of the undisputed fact of Barbara's need, could warrant a termination of alimony. There were no changes of circumstances relevant to the issue here. Additionally, it is apparent that the trial judge gave the "changed circumstances" that the majority conjures up no consideration whatsoever.

The trial judge's order was clearly of a punitive nature. What public policy is served by rewarding a prosperous physician, at the expense of the general public? The state's interest in having alimony paid to a needy former spouse has been thwarted by this decision.

The order should in law and in justice be reversed.

The petitioner wholly failed to sustain his burden of proof. Upon the evidence of record, it is clear that the trial court order was not supported by an adequate record but was wholly the result of an abuse of discretion.

I am authorized to state that Mr. Justice DAY joins in this dissent.