Harry C. MOORE, Plaintiff-Respondent, v. Vera MOORE, Defendant-Appellant.

Supreme Court

*No. 76–480. Argued May 1, 1979.—*
*Decided May 30, 1979.*
(Also reported in 278 N.W.2d 881.)

For the appellant there were briefs by *Richard R. Grant* and *Wickhem, Consigny, Andrews & Hemming, S.C.*, of Janesville, and oral argument by *Mr. Grant*.

For the respondent there was a brief by *Richard E. Rosenberg* and *Nowlan, Mouat, Lovejoy, Wood & Cripe*, of Janesville, and oral argument by *Mr. Rosenberg*.

WILLIAM G. CALLOW, J. On October 18, 1965, following a childless second marriage of about two and one-half years, Harry Moore was granted a default divorce from Vera Moore on the ground of her cruel and inhuman treatment. Mr. Moore's first marriage produced five children. His child support obligation ended in 1973. At the time of the divorce, he estimated his net worth to be between $505,000 and $697,000. A stipulation, incorporated into the divorce judgment, contained the following terms:

"IX. *Alimony*.

"A. *Basic Alimony*. It is agreed that the plaintiff shall make the following payments to the defendant, as and for alimony, which payments shall terminate upon the death or the remarriage of the defendant except as otherwise provided herein. The payments shall be made on or before the 15th day of each month, through the Clerk of Court for Rock County, Wisconsin.

"1. $1,500.00 in each month, October, 1965 through September, 1968, inclusive.

"2. $1,000.00 in each month, October, 1968 through September, 1971, inclusive.

"3. $500.00 in each month, October, 1971 through September, 1976, inclusive.

"All payments due through September, 1971, shall be payable, notwithstanding the death of the plaintiff. All other payments shall terminate upon the death of the plaintiff.

"B. *Additional Alimony*. It is agreed that the plaintiff shall make the following payments to the defendant, as and for alimony, which payments shall terminate upon the death of either party or the remarriage of the defendant. The payments shall be made through the Clerk of Court for Rock County, Wisconsin.

"1. $15,000.00 on the fifth business day after the date of the granting of the divorce in this action.

"2. $10,000.00 on January 15, 1966.

"3. $10,000.00 on January 31, 1967."

As a division of property, Mrs. Moore received personal property valued at $10,000–$15,000 more than the value of the property she brought to the marriage.

On April 14, 1975, Mrs. Moore sought increased alimony by way of an order to show cause why the divorce judgment should not be modified to provide an increase in alimony from $500 per month to at least $2,800 monthly. Mrs. Moore by affidavit stated that her needs were increased by inflation, medical expenses, and the necessity of supporting her parents. Mrs. Moore lived in Germany, did not remarry and was unemployed.

The trial court determined the payments in question were properly considered alimony, were not part of the division of property, and were subject to revision under sec. 247.32, Stats., 1963.[1] Following an evidentiary hearing, the court denied the request to increase the payments.

Mrs. Moore appeals. Mr. Moore seeks review of the trial court's determinations that the payments at issue constituted alimony and that they were subject to modification.

The record amply supports the trial court's conclusion that the payments identified as "Basic Alimony" and "Additional Alimony" were in fact alimony and not an award as part of the division of estate. Such payments were to decrease and eventually end after a substantial period of time, recognizing the need to maintain the former spouse during the postdivorce period of adjustment to economic self-sufficiency. This court has held, in cases considered prior to the legislative changes in the law which expressly provided for limited alimony, that terminable payments may constitute alimony. *Fritschler v. Fritschler*, 60 Wis.2d 283, 291, 208 N.W.2d 336 (1973); *Sholund v. Sholund*, 34 Wis.2d 122, 131, 148 N.W.2d 726 (1967). Section 247.26, Stats., 1963,

---

[1] "247.32 **Revision of judgment.** After a judgment providing for alimony or other allowance for the wife and children, or either of them, or for the appointment of trustees as aforesaid the court may, from time to time, on the petition of either of the parties and upon notice to the family court commissioner, revise and alter such judgment respecting the amount of such alimony or allowance and the payment thereof, and also respecting the appropriation and payment of the principal and income of the property so held in trust, and may make any judgment respecting any of the said matters which such court might have made in the original action. But when a final division of the property shall have been made under s. 247.26 no other provisions shall be thereafter made for the wife."

gave discretionary authority to the court to grant "such alimony out of the property or income of the husband, for her support and maintenance . . . as it deems just and reasonable." The award was identified and treated as alimony, and there was no error in the trial court's determination that the payments were alimony.

The trial court was also correct in deciding that the payments, as alimony, could be revised. Sec. 247.32, Stats., 1963, provided in part that "[a]fter a judgment providing for alimony . . . the court may . . . revise and alter such judgment respecting the amount of such alimony." The statute was amended in 1972[2] to provide that a judgment awarding alimony for a limited period may not be revised as to the alimony award; but the amendment was limited to actions in which judgment is rendered or granted after the effective date of the Act, April 12, 1972. This judgment having been rendered October 18, 1965, the provisions of former sec. 247.32 apply, and the court had authority to revise the award of alimony.

The remaining issue presents the question whether the trial court abused its discretion in refusing to modify the alimony award. The general rule in Wisconsin is that a provision for alimony will not be changed except upon a positive showing of a change of circumstances, especially where the original provision is based on an agreement of the parties. *Taake v. Taake,* 70 Wis.2d 115, 121, 233 N.W.2d 449 (1975). Where the payments are according to stipulation, "the substantial or material change in the circumstances should be such that it would be unjust or inequitable to strictly hold either party to the judgment." *Miner v. Miner,* 10 Wis.2d 438, 441–42, 103 N.W.2d 4 (1960). Modification of the award is

[2] Section 12, Chapter 220, Laws of 1971, effective April 12, 1972.

within the discretion of the trial court. *Taake, supra* at 122.

The court in a memorandum decision summarized the basis of its refusal to change the award as follows:

"Since this was a short, childless, second marriage for each party, with the Court being satisfied that the first alimony payments designated "additional alimony payments" of $35,000 together with the property award, economically rehabilitated the defendant to a financial condition superior to her financial condition at the time of marriage; and considering that subsequent thereto "basic alimony" payments of $120,000 have been made, and that defendant's most significant health difficulties, if established, are wholly unrelated to matters associated with the marital arrangement and that the Court is not satisfied she has made reasonable efforts toward economic rehabilitation during the period alimony has been received, the Court will not at this time modify the decree of divorce to extend or increase defendant's alimony award."

We conclude the evidence discloses ample support for the trial court's determination.

Mrs. Moore's claim of changed circumstances rests primarily on her testimony concerning her deteriorating health and its impact on her earning capacity. Mrs. Moore testified that she had two benign breast lumps removed during the last year of her marriage to Mr. Moore and that as a result she must have regular check-ups at a cost of $150 per year. She also testified that she had gall bladder and appendix problems which she controlled by regulating her diet. Mrs. Moore said that she suffered from spells of dizziness in the summer of 1966, for which she was seen by a physician. Further examination revealed no organic disorder, and the symptoms disappeared after approximately three months.

An examination in December, 1966, revealed that she had heart rhythm and blood pressure abnormalities which she controlled with medication. That examination

also revealed a narrowing of the bone formation surrounding the cervical artery.

Mrs. Moore also testified that she was ill with salmonella poisoning and hepatitis from the fall of 1969 to the summer of 1970 and required hospitalization for six weeks. Finally, Mrs. Moore testified that she suffered the following injuries in a 1974 auto accident: whiplash, a hematoma in the legs, a broken toe, two broken teeth, and a hearing problem. She testified she receives neck traction treatments for ten consecutive days every three months, on the average, at a cost of from $15 to $24 per treatment, and one or two massages each week at a cost of $7 per massage. Her insurance did not cover the treatments or medication, and she was unable to recover from the driver who injured her. She offered no medical expert testimony to support her testimony concerning her ailments.

Mrs. Moore maintains that these treatments make it impossible for her to find a job. The record reveals she did not have employment during the eight-year period between the divorce and her auto accident. Before her marriage to Mr. Moore, Mrs. Moore operated an import business. An attempt to re-enter the business following the divorce was unsuccessful. Though Mrs. Moore had experience in the movie and television industry and as an interpreter and switchboard operator prior to her marriage, there is nothing in the record to indicate she sought employment in these fields. She testified she tried free-lance journalism, applied for a job as a representative buyer for Italian leather goods, and interviewed several times to become an executive housekeeper.

Mrs. Moore also argues that the trial court erred as a matter of law in relying on the fact that Mr. Moore was not responsible for the changed circumstances. This statement was not crucial to the court's reasoning.

We conclude the trial court did not abuse its discretion in determining that Mrs. Moore failed to sustain her burden of demonstrating changed circumstances and accordingly was not in error in failing to modify the terms of the stipulated judgment pertaining to alimony.

*By the Court.*—Order affirmed.