Shirley M. VAN GORDER, a/k/a Sherry Van Gorder, Plaintiff-Appellant,

v.

Edwin S. VAN GORDER III, Defendant-Respondent.

Supreme Court

*No. 81–1713. Argued November 1, 1982.—Decided January 5, 1983.*

(Also reported in 327 N.W.2d 674.)

For the appellant there were briefs by *Michael S. Jacobs* and *Jacobs, Webb & Weiden,* Madison, and oral argument by *Michael S. Jacobs.*

For the respondent there was a brief and oral argument by *Karen M. Appel,* Lake Geneva.

STEINMETZ, J.   The appeal is from the circuit court to the court of appeals which certified the case to this court. We accepted certification on May 3, 1982.

The issue is whether continuous cohabitation of a divorced person with another person is sufficient ground alone for the termination of maintenance payments made pursuant to stipulation entered into at the time of the divorce.

The issue arises from the filing of a notice of a motion to amend divorce judgment and a motion to amend divorce judgment each dated April 24, 1981. The motion was supplemented by the affidavit of Edwin Van Gorder, the divorced husband. On July 6, 1981, an evidentiary hearing on the motion was held before the Honorable John J. Byrnes who issued the order which is the subject of this appeal. The trial court found:

"1.   That plaintiff has engaged in continuous cohabitation with a man other than defendant without the benefit of marriage.

"2.   That the manner and extent of said cohabitation including, but not limited to, the fact the man with whom plaintiff is cohabiting has the ability to contribute to the support of the plaintiff, is a sufficient change of circumstances to affect the defendant's responsibility to provide alimony for plaintiff's support."

Based on those findings, the court ordered as follows:

"That the defendant, Edwin Van Gorder, is relieved from payment of alimony to plaintiff, Shirley Van Gorder, as of April 1, 1981, until further order of this Court."

The facts giving rise to this dispute are as follows. After a marriage of 17 years, the Van Gorders were divorced in Cook County, Illinois, on July 21, 1971. As a part of their divorce action, they executed a property settlement agreement dated June 22, 1971. Among other matters, the agreement awarded to Mrs. Van Gorder sole

custody of the three minor children of the parties and obligated Mr. Van Gorder to pay child support in the total amount of $300 per month and maintenance payments in the amount of $700 per month. The agreement provided for a dollar-for-dollar reduction in the amount of maintenance should the wife's income exceed $8,000 per year. No time limit was attached to the maintenance payments, nor was any cut-off date established for such payments. The agreement further provided that if the husband received an inheritance from his mother, he was to pay his wife $20,000.

Following the divorce, the husband made all of the child support payments required of him,[1] and until April of 1981, made all of the maintenance payments required. In April, he made no maintenance payment and in the same month brought this motion. His affidavit in support of his motion to amend the divorce judgment and his refusal to make further maintenance payments were based on his belief that his former wife was living in a "de facto marital relationship" with another male and that she was "helping to support said male companion with the assistance of the alimony payments" made by him.

At the hearing on the motion, Mrs. Van Gorder stipulated on the record and before any testimony was taken that she had cohabited continuously with Melvin Brenner since September 1, 1979. On that date, Mr. Brenner moved into the apartment where Mrs. Van Gorder had been living for the preceding several years. Both Mrs. Van Gorder and Mr. Brenner testified about the nature of their relationship. At the time of the hearing, Mrs. Van Gorder was 46 years old and Mr. Brenner was 58. Prior to their cohabitation, they had seen each other

---

[1] Child support payments ceased in 1978 when all of the children had attained majority age.

socially since 1978 and had engaged in a courtship which included vacation trips together. They each testified that their respective budgets during cohabitation remained virtually identical to their pre-cohabitation budgets, except for the fact that Mrs. Van Gorder pays the entire rental fee of $286 per month on her apartment. Mr. Brenner lives rent-free.

Mrs. Van Gorder and Mr. Brenner never executed any written agreement for joint support and claim no verbal agreement regarding it. They have no joint bank accounts and in fact maintain separate bank accounts in different banks. They own no assets jointly. Neither is a beneficiary of the other's will. Mrs. Van Gorder owns a $15,000 annuity purchased from the $20,000 received from Mr. Van Gorder after his mother's estate passed to him in 1975. Mr. Brenner is not a beneficiary of the annuity.

Mrs. Van Gorder works as a typist in the nursing office at Madison General Hospital, earning $300 net every two weeks. Mr. Brenner works as a social work researcher and a creative consultant for an entertainment corporation, earning approximately $2,250 net every month.

Mrs. Van Gorder pays the full amount of the rent, just as she did before Mr. Brenner moved into her apartment. She pays the entire telephone bill and is then reimbursed by Mr. Brenner for calls made by him. She pays for her share of the food, in an amount roughly equal to what she paid before cohabitation. She pays for her own insurance, clothes, medical expenses, laundry, and newspaper. She also sends $200 per month to the daughters born of her marriage to Mr. Van Gorder. The daughters are now all adults and not living with either parent.

Mr. Brenner pays for the couple's entertainment—movies, plays, meals at restaurants, as he did before they were living together. Mr. Brenner and Mrs. Van Gorder had agreed before they began cohabiting that Mr. Brenner

would pay no rent so that he could set aside some money to pay for the education of two of his children now attending college.

Including the maintenance payment, Mrs. Van Gorder's after-tax income in 1980 amounted to approximately $1,026 per month. Her regular monthly expenses totaled $860, which included the $200 per month she gave to her daughters.

The trial court ordered the maintenance payments to be terminated based on its findings that Mrs. Van Gorder "has engaged in continuous cohabitation with a man other than defendant without the benefit of marriage;" and that "the man with whom plaintiff is cohabiting has the ability to contribute to the support of the plaintiff."

In *Vander Perren v. Vander Perren*, 105 Wis. 2d 219, 230, 313 N.W.2d 813 (1982) we described the limitations of maintenance payments as follows:

"The payment of maintenance is not to be viewed as a permanent annuity. Rather, such payment is designed to maintain a party at an appropriate standard of living, under the facts and circumstances of the individual case, until the party exercising reasonable diligence has reached a level of income where maintenance is no longer necessary."

Maintenance payments can be justified on one ground only—the obligation of the supporting spouse to support the other spouse in the manner to which that spouse was accustomed during the marriage. *Jordan v. Jordan*, 44 Wis. 2d 471, 475, 171 N.W.2d 385 (1969); *Tonjes v. Tonjes*, 24 Wis. 2d 120, 125, 128 N.W.2d 446 (1964).

Sec. 767.26, Stats., describes the factors to be considered by the trial court when awarding maintenance. It provides:

"767.26 **Maintenance payments.** Upon every judgment of annulment, divorce or legal separation, or in rendering

a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(1) The length of the marriage.

"(2) The age and physical and emotional health of the parties.

"(3) The division of property made under s. 767.255.

"(4) The educational level of each party at the time of marriage and at the time the action is commenced.

"(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

"(7) The tax consequences to each party.

"(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(9) The contribution by one party to the education, training or increased earning power of the other.

"(10) Such other factors as the court may in each individual case determine to be relevant."

Sec. 767.32(1), Stats., provides maintenance payments under sec. 767.26 may be revised after judgment. It states in part:

"767.32 **Revision of judgment.** (1) After a judgment providing for . . . maintenance payments under s. 767.26 . . . the court may, from time to time, on the petition of either of the parties, . . . and upon notice to the family

court commissioner, revise and alter such judgment respecting the amount of such maintenance or child support and the payment thereof, . . . and may make any judgment respecting any of the matters which such court might have made in the original action . . . ."

We stated in *Moore v. Moore*, 89 Wis. 2d 665, 669–70, 278 N.W.2d 881 (1979) :

"The general rule in Wisconsin is that a provision for alimony will not be changed except upon a positive showing of a change of circumstances, especially where the original provision is based on an agreement of the parties. *Taake v. Taake*, 70 Wis. 2d 115, 121, 233 N.W.2d 449 (1975). Where the payments are according to stipulation, 'the substantial or material change in the circumstances should be such that it would be unjust or inequitable to strictly hold either party to the judgment.' *Miner v. Miner*, 10 Wis. 2d 438, 441–42, 103 N.W.2d 4 (1960). Modification of the award is within the discretion of the trial court. *Taake, supra* at 122."

A change in circumstances regarding the need for maintenance payments must relate to a change in the financial circumstances of the parties. As to the consideration of changed circumstances being financial in nature, we stated in *Thies v. MacDonald*, 51 Wis. 2d 296, 302, 187 N.W.2d 186 (1971) :

"The court's power to modify the provisions of the judgment of divorce is not the power to grant a new trial or to re-try the issues determined by the original hearing, but only to adapt the decree to some distinct and definite change in the financial circumstances of the parties or children."

The Legislative Council Notes to the Divorce Reform Act, ch. 105, Laws of 1977, effective February 1, 1978, sec. 767.26, Stats., though not binding, are informative as to legislative intent. They state in relevant part:

"The Wisconsin courts have traditionally refused to modify the amount of maintenance payments unless the

party seeking modification can prove that a 'change of circumstances' has occurred since the original maintenance payment order was granted. The Divorce Reform Act requires the court to consider each parent's 'earning capacity' and 'total economic circumstances' in deciding whether a change of circumstances has occurred."

We previously considered the effect of cohabitation by a former spouse and another person and the effect that relationship had on maintenance payments in *Taake v. Taake,* 70 Wis. 2d 115, 233 N.W.2d 449 (1975). In *Taake,* the recipient spouse, Mrs. Taake, was cohabiting with another man. The couple had an arrangement whereby Mrs. Taake paid $25 per month in rent, paid for part of the groceries, and did at least part of the housework. The trial court terminated the maintenance payments because it found that Mrs. Taake was living in a "de facto marriage relationship."

This court affirmed, finding that there was a sufficient change in circumstances to permit the trial court to terminate maintenance payments. The court stated:

"We acknowledge that a divorced wife owes no duty of sexual fidelity to her former husband. However, her cohabitation with another man can be acknowledged as a change of circumstances affecting her former husband's responsibility to provide alimony for her support. The manner and extent of the cohabitation and circumstances should be considered in determining whether alimony payments are to be changed." *Id.* at 121.

In *Taake,* the majority commented on some of the changes in financial circumstances and stated:

"These were material changes in the circumstances that the court considered when the original award of alimony was made. Her cohabitation with Lyle Fink was not an occasional indiscretion but continuous cohabitation with arrangements for joint support." *Id.* at 121–22.

Since there are no "arrangements for joint support" in her relationship with Mr. Brenner, Mrs. Van Gorder

argues that their cohabitation is not a change in circumstances allowing for a termination or alteration of maintenance. We disagree. It is not the arrangements for joint support alone that control but rather the actual financial condition of the recipient former spouse.

Mr. Van Gorder argues that according to *Taake*, cohabitation by itself is a sufficient change of circumstances that justifies the termination of maintenance payments. This is especially so, he contends, since Mr. Brenner has the ability to support Mrs. Van Gorder in part or totally. We disagree. It was error for the court to relieve Mr. Van Gorder of his maintenance payment obligation based solely on the fact that Mrs. Van Gorder was cohabiting. Cohabitation is only a factor to consider to the extent it may change a recipient former spouse's economic status.

There are two underlying concerns that arise when a former spouse cohabits while continuing to receive maintenance payments. First, where the cohabitation does enhance the recipient's financial condition, payments that are no longer needed for support should not have to be made. And second, cohabitors should not be able to fashion their relationship and finances in a manner that is intended solely to prevent the modification of maintenance payments.

Since the act of cohabiting often encompasses a myriad of situations with varying economic consequences, the task of determining whether maintenance payments should be changed is not necessarily an easy one. The trial judge should initially determine whether, in fact, the economic conditions of the former spouse receiving maintenance have improved. If the evidence shows that the recipient spouse is being entirely supported by the cohabitor, that certainly constitutes a changed circumstance warranting an adjustment of maintenance pay-

ments. Where the cohabiting couple shares expenses, it may be appropriate to decrease or terminate maintenance payments, since under some circumstances, two people living together can live cheaper than if they lived separately. Where it appears that the recipient spouse is supporting the cohabitor, that fact is only relevant to the extent it demonstrates that the current maintenance payment may be unnecessarily high since it can support two people. But it must also be recognized that certain living expenses, such as rent, would in many cases be the same whether the recipient spouse lived alone or not. Therefore, the fact that a cohabitor is living rent free may not be relevant to the changed economic circumstances of the recipient spouse. It would be relevant only if the trial court could find that the recipient spouse should be living in less expensive housing and was living in more spacious or luxurious accommodations only as a consequence of cohabitation. Mrs. Van Gorder's rented premises previously were sufficient for herself and daughters, and whether they are still appropriate for her alone may be an issue of changed circumstances.

The trial judge must examine all of the circumstances surrounding the recipient wife's financial status. The trial judge should also reconsider the factors enumerated in sec. 767.26, Stats., and the effect the cohabitation may have on those factors. Finally, the trial court should conduct an evidentiary hearing to determine whether the cohabiting parties have fashioned their living arrangement for the purpose of preventing the cessation of maintenance payments.

The dissent contends that this decision will discourage initial marriages because of the possibility of permanent financial obligation for maintenance if the marriage fails. We find it incredible to believe that any couple would avoid marrying simply because *if* their marriage fails,

and *if* a former spouse cohabits, the paying spouse would have to continue maintenance payments, *if* financial circumstances remained unchanged.

The majority is mindful of the criminal code provisions of ch. 944, Stats., referred to in the dissent. These provisions are intended to be enforced through police investigations and prosecutorial complaint with designated criminal sanctions. They have not been referenced by the legislature into "The Family Code."

There is no issue in this case as to Mr. Van Gorder's ability to pay. His inheritance after the divorce is not relevant as to his former wife's need for support, since by agreement she accepted $20,000 as a settlement from his expected inheritance and under present Wisconsin law would not have been entitled to any of his inheritance. Also, that inheritance was received after the marriage terminated and was not a factor in the type of support Mrs. Van Gorder was accustomed to during the marriage.

The true issues as to changed economic circumstances in this motion have never been considered by the trial court. We find that the lower court abused its discretion when terminating Mrs. Van Gorder's maintenance payments, since the termination was based solely on Mrs. Van Gorder's cohabitation. Maintenance payments can be modified only on the basis of a change in the financial circumstances of the parties. How cohabitation affects those circumstances is only one factor to be considered. The case is remanded to the trial court to conduct a hearing on the motion consistent with this opinion.

*By the Court.*—The order of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

BEILFUSS, C. J. (*concurring*). I concur with the majority opinion insofar as it reverses and remands for further hearing. As I read the majority opinion, it re-

verses because the trial court discontinued maintenance payments to the former wife solely upon the ground of cohabitation with another man.

I adhere to our statement in *Taake v. Taake*, 70 Wis. 2d 115, 121, 233 N.W.2d 449 (1975), quoted by both the majority and the dissent. Cohabitation, even an unlimited cohabitation setting such as this is, in and of itself is not a sufficient ground for terminating all maintenance. However, if the financial relationships are such that the divorced spouse's financial living requirements are reduced or under the circumstances of the cohabitation they should, in good conscience, be reduced, it is entirely proper for the trial court to consider that fact in determining whether maintenance payments should be altered.

WILLIAM G. CALLOW, J. (*dissenting*). I disagree with the majority's conclusion that maintenance payments can be modified only on the basis of a change in the financial circumstances of the parties. The majority opinion opens the door to potential abuse by the recipient ex-spouse and departs from existing legislative command and judicial mandate. In order to safeguard against such abuse and conform to existing law, more than just the financial circumstances of the parties must be considered.

A number of statutes give guidance in this matter. Sec. 767.26 entitled, "Maintenance payments," authorizes the court to grant maintenance for a limited or indefinite period of time and specifies ten factors to be considered. The tenth factor is applicable to this case. It provides that the court shall consider such other factors as the court may in each individual case determine to be relevant. In determining what may be relevant, I believe the declarations of intent set forth by the legislature are fundamental. Sec. 765.001, Stats., identifies Chapters 765 to 768 as "The Family Code." Sec. 765.001 provides:

"765.001 Title, intent and construction of chs. 765 to 768. (1) TITLE. Chapters 765 to 768 may be cited as "The Family Code".

"(2) INTENT. It is the intent of chs. 765 to 768 to promote the stability and best interests of marriage and the family. Marriage is the institution that is the foundation of the family and of society. Its stability is basic to morality and civilization, and of vital interest to society and the state. The consequences of the marriage contract are more significant to society than those of other contracts, and the public interest must be taken into account always. The seriousness of marriage makes adequate premarital counseling and education for family living highly desirable and courses thereon are urged upon all persons contemplating marriage. The impairment or dissolution of the marriage relation generally results in injury to the public wholly apart from the effect upon the parties immediately concerned.

"(3) CONSTRUCTION. Chapters 765 to 768 shall be liberally construed to effect the objectives of sub. (2)."

Sec. 767.32(3), Stats., specifically provides that "[a]fter a final judgment requiring maintenance payments has been rendered and the payee has remarried, the court shall, on application of the payer with notice to the payee and upon proof of remarriage, vacate the order requiring such payments."

Chapter 944, Stats., entitled, "Crimes Against Sexual Morality," speaks to misconduct. Sec. 944.20(3), Stats., prohibits open cohabitation and association with a person known not to be a spouse under circumstances which imply sexual intercourse. Sec. 944.15, Stats., makes it a crime for a person to have sexual intercourse with a person who is not his or her spouse.

In *Taake v. Taake*, 70 Wis. 2d 115, 121, 233 N.W.2d 449 (1975), we addressed a situation similar to the Van Gorder problem. We said that a divorced woman owes no duty of sexual fidelity to a former husband. I agree.

This court went on to say: "However, her cohabitation with another man can be acknowledged as a change of circumstances affecting her former husband's responsibility to provide alimony for her support. The manner and extent of the cohabitation and circumstances should be considered in determining whether alimony payments are to be changed." We noted that Mrs. Taake's cohabitation was not an occasional indiscretion but a "continuous cohabitation with arrangements for joint support." *Id.* at 122. We affirmed the order of the trial court terminating alimony, noting that the trial court did not abuse its discretion. We went on to say that, while it was proper to terminate alimony during the period of cohabitation, it may be appropriate for alimony to be reconsidered at a later time if Mrs. Taake discontinued her cohabitation. I read *Taake* to declare that it was proper for the trial court to terminate maintenance because of the recipient ex-spouse's continuous cohabitation with another man. The dissent vigorously argued that financial need should be the controlling factor. The majority has now moved to the position taken by the dissenters in *Taake.*

The majority places an unreasonable and unjustified burden on the payor ex-spouse when a marriage is terminated. Under the majority's reasoning, the simple act of marriage obligates Edwin Van Gorder to pay maintenance as long as Shirley Van Gorder's financial circumstances remain unchanged. This obligation remains even though Melvin Brenner and Shirley Van Gorder, in violation of the laws and the stated intent of the legislature concerning marriage, live in a relationship closely approximating marriage. Under *Taake,* I believe the trial court properly excused Edwin Van Gorder from his obligation to pay maintenance while the illegal cohabitation continues. The *Taake* court properly concluded an ex-spouse should not be permitted to enjoy both the benefits

of a de facto marriage relationship and continue to receive alimony.

The majority retreats from *Taake,* and this retreat is an affront to the clear intent of the applicable legislative declarations. It does a disservice to the institution of marriage and rewards illegal conduct.

This is a stronger case for terminating maintenance than was *Taake.* The parties presented the trial court with stipulated facts concerning the relationship which was acknowledged to be a sharing of bed and board by Brenner and Shirley Van Gorder. There was no suggestion of financial hardship for this couple because Brenner had a net income of $2,250 per month and Shirley Van Gorder had a net income of $300 every two weeks, plus dividend income. In *Taake,* however, the record revealed that Mrs. Taake had financial problems. She had sold the home she received in the divorce judgment and no longer received $550 support because the children had reached maturity. She also was experiencing emotional difficulties and was unable to work. Notwithstanding these considerations, this court affirmed the trial court's termination of the $200 per month alimony. I believe these facts support my conclusion that our decision affirming the trial court's termination of alimony in *Taake* was firmly rooted on the illicit cohabitation.

The majority retreats from the *Taake* decision and now condones illegal cohabitation by excluding the illegal cohabitation factor from consideration in the matter of maintenance. In limiting the considerations available to the trial court in this sensitive area, marriage and morality are the losers. When a marriage is terminated by divorce, maintenance may become an unending financial burden upon the former spouse because the payor's financial ability to pay and financial need are the only factors to be considered by the trial court. It is in the best interest of society to encourage divorced parents to

maintain an amicable relationship because, although the bonds of matrimony are terminated, the bond which binds them forever are the children of the marriage. Nothing will promote more bitterness than requiring a former spouse to pay maintenance to a recipient ex-spouse who is living in a de facto marriage arrangement with a new partner. This result frustrates both the statute which terminates maintenance upon remarriage and those statutes which favor marriage.

The institution of marriage has been presumed to be a commitment by each partner to the establishment of a unit of society known as a family. The intimacy of marriage sets it apart from every other relationship. Because marriage contemplates a permanent commitment between the partners, the law imposes certain rights and obligations upon each partner. If the marriage terminates, society recognizes that a financial obligation for maintenance might continue under the enumerated factors set forth in sec. 767.26, Stats. The maintenance obligation is based upon the fact that the marriage may have enhanced the earning capacity of one partner and inhibited the earning capacity of the other. Accordingly, the court is authorized to equitably apportion funds between the parties until the spouse receiving financial maintenance remarries or becomes financially independent. The beauty of marriage is tarnished if it is to be a financial trap. The majority opinion in this case discourages marriage. A first marriage will be avoided because of the possibility of permanent financial obligation for maintenance if the marriage fails. A second marriage will be avoided because it would terminate the maintenance awarded at the time of the termination of the first marriage.

The laws identified as "The Family Code" are intended to promote familial stability. I believe the majority opinion is inconsistent with the purposes of "The Fam-

ily Code," ignores the authority granted to trial courts by sec. 767.26 (10), Stats., overrules the *Taake* decision, and erodes the institution of marriage.

I am authorized to state that Justice LOUIS J. CECI joins in this dissenting opinion.