IN RE the MARRIAGE OF:

Diane M. WETTSTAEDT, Petitioner-Appellant,†

v.

Gary E. WETTSTAEDT, Respondent-Respondent.

Court of Appeals

*No. 00–3061. Submitted on briefs February 5, 2001.—Decided March 8, 2001.*

## 2001 WI App 94

(Also reported in 625 N.W.2d 900.)

†Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *John A. Baxter* and *Eric D. Reinicke* of *Karrmann, Buggs & Baxter*, Platteville.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Kristina Cervera Garcia* of *John T. Fields & Associates,* Brookfield.

Before Dykman, P.J., Vergeront and Deininger, JJ.

¶ 1.  DEININGER, J.  Diane Wettstaedt appeals an order which reduces the amount of maintenance her former husband must pay to her by the amount of pension benefits she receives under a Qualified Domestic Relations Order (QDRO)[1] entered at the time of the divorce. She claims the trial court erred in reducing the amount of Gary Wettstaedt's maintenance obligation because her receipt of pension benefits does not constitute a substantial change in circumstances, and because the trial court's order results in the impermissible "double-counting" of the pension benefits as both an asset for property division and as income for the maintenance determination. We disagree and conclude the trial court did not erroneously exercise its discretion in modifying the maintenance obligation in light of Diane's receipt of pension benefits under the QDRO.

## BACKGROUND

¶ 2.  The Wettstaedts married in 1970 and divorced in 1998. Under the terms of their divorce judgment, Gary pays Diane maintenance in the amount of $279.10 per week, or approximately $1,200 per month. In June 2000, Gary moved for an order modifying the amount of maintenance, citing a change in his financial circumstances and his desire to retire soon after his retirement eligibility date in October 2000.

¶ 3.  At the hearing on his motion, Gary testified that he would turn fifty-five in September and would

---

[1] "A qualified domestic relations order permits payment of benefits of qualified private retirement plans to one other than the employee spouse." *Schinner v. Schinner*, 143 Wis. 2d 81, 86 n.1, 420 N.W.2d 381 (Ct. App. 1988).

be eligible to draw a retirement pension from his employer of thirty years commencing the following month. Out of a total pension benefit of $2,055 per month, Diane would receive $864 pursuant to a QDRO entered at the time of the divorce. If Gary retired in October 2000, he would receive the remaining $1,191 per month, plus an "early retirement supplement" of $310 per month until he turned sixty-two, and Diane would receive a $212 supplement in addition to her QDRO benefit.

¶ 4. The trial court found that Gary had not established that "early retirement was a medical necessity," and that a voluntary decision by him to retire at fifty-five "would not justify eliminating the maintenance award." The court concluded, however, that the vesting of the parties' pension benefits and Gary's impending retirement constituted a change in circumstances, and that reducing Gary's maintenance obligation by the amount of monthly pension benefits Diane would receive did not represent impermissible "double-counting." Accordingly, it ordered that Gary's "maintenance obligation shall be and hereby is reduced by the amount of pension benefits, including supplemental benefits, received" by Diane. Because it also acknowledged that the order "could be viewed as contrary to the 'double-counting' cases" cited in its decision, the court enjoined Gary "from taking any action in connection with his employment, in reliance on this decision, until the time for appeal has expired."

¶ 5. Diane appeals the order reducing maintenance by the amount of pension benefits she receives. The parties agreed to submit this as an "expedited appeal" under WIS. STAT. RULE 809.17 (1999–2000).[2]

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

Although, following conference, we ordered the appeal removed from the expedited appeals program, we have advanced its submission and disposition in light of the trial court's injunction. *See* WIS. STAT. RULE 809.20.

## ANALYSIS

¶ 6.  A decision to modify a maintenance award is committed to the discretion of the circuit court, and we will not disturb it unless the court has erroneously exercised its discretion. *Seidlitz v. Seidlitz*, 217 Wis. 2d 82, 86, 578 N.W.2d 638 (Ct. App. 1998). A court may modify maintenance only "upon a positive showing of a change of circumstances," which must be "substantial" and "relate to a change in the financial circumstances of the parties." *Johnson v. Johnson*, 217 Wis. 2d 124, 127, 576 N.W.2d 585 (Ct. App. 1998).

¶ 7.  We must first inquire, therefore, whether the trial court erred in finding that Gary's impending retirement, and Diane's receipt of pension benefits under the QDRO, constitute a substantial change in the parties' financial circumstances. At the time of divorce, Gary was earning approximately $5,000 per month in gross salary as an industrial engineering manager, and Diane grossed some $1,500 per month from her employment. Gary testified that upon retiring, his only income would be the $1,500 per month in regular and supplemental pension benefits from his former employer.[3] Diane, upon Gary's retirement, will receive $1,076 per month in pension benefits, which, of

---

[3] Gary's 1999 income tax return, introduced as an exhibit at the hearing on his motion, indicates that Gary also receives about $200 per month in interest income.

course, she was not receiving at the time the divorce judgment was entered in March 1998.

¶ 8.  We conclude that the trial court did not err in determining that the significant change in both parties' incomes occasioned by Gary's retirement represents a substantial change in each of their financial circumstances. We concur with the trial judge's assessment that, when his predecessor entered the order for $1,200 per month in maintenance, he

> was aware that at some point [Gary] would be retiring from his employment and maintenance would have to be adjusted accordingly. By equally dividing [Gary's] pension benefits through a Qualified Domestic Relations Order, [the prior judge] was able to insure that each party would enjoy a comparable level of post-retirement income.

¶ 9.  We next address Diane's contention that the trial court erroneously exercised its discretion in modifying maintenance because it impermissibly "double-counted" the pension benefits Diane receives under the QDRO when it considered the benefits as income to her for purposes of determining maintenance. *See Kronforst v. Kronforst*, 21 Wis. 2d 54, 63–64, 123 N.W.2d 528 (1963). We conclude the court did *not* "double-count" the pension benefit. (Thus, we do not address whether "double-counting" on the present facts would be a proper exercise of discretion. *See Cook v. Cook*, 208 Wis. 2d 166, 179–80 ¶¶ 29–30, 560 N.W.2d 246 (1997) (noting that the *Kronforst* "double-counting" rule is not absolute or inflexible).)

¶ 10.  The divorce judgment provided for an equal division of the parties' marital estate, with each party receiving one-half the net proceeds from the sale of their residence and $73,590 in other assets, after a

balancing payment from Gary to Diane. The value of Gary's pension, however, was *not* included in the division. In place of values under both the "Husband" and "Wife" columns of the property division balance sheet was inserted "1/2 QDRO." Thus, Diane did not "give up" other property in exchange for her interest in the pension, and Gary did not receive other property as an offset to Diane's future right to share in his pension.[4]

¶ 11. The division of Gary's pension by QDRO at the time of the parties' divorce is thus in sharp contrast to the treatment of the pensions at issue in most "double-counting" cases. In *Kronforst*, the value of the husband's interest in his employer's "profit-sharing trust" was included in the assets awarded to him in an approximately equal division of the parties' property. The supreme court concluded that, in awarding maintenance to the wife, the trial court had improperly considered the fact that the husband's income " 'will be increased through payments from the Pension Sharing Trust.' " *Kronforst*, 21 Wis. 2d at 63. The court then set out the reasoning which has underpinned the application of the "double-counting" rule ever since:

---

[4] By contrast, values for a "Mutual of Am." pension and "TDA," which were apparently benefits from Diane's employer, were included under the "Wife" column, and were thus "counted against" Diane in the property division, in that Gary received other assets to offset their value. Distributions from these accounts are not at issue in this appeal. We observe, however, that in *Pelot v. Pelot*, 116 Wis. 2d 339, 346, 342 N.W.2d 64 (Ct. App. 1983), we concluded that where "[t]he full value of every asset assigned to each spouse is credited against that spouse's percentage share in the marital estate," a party assigned an interest in a pension plan "should receive the full value of his pension plan . . . before his pension benefits can be considered income" for maintenance purposes.

Thus the trial court not only included the profit-sharing trust asset as part of the net estate awarded defendant on division, but also included it as income in determining the amount of permanent alimony. This clearly constituted error. We view the matter no differently than if the $9,749 had constituted cash in a bank deposit standing in defendant's name. Such an asset cannot be included as a principal asset in making division of the estate and then also as an income item to be considered in awarding alimony.

*Id.* at 63–64.

■

¶ 12.   This court recently applied the rule in *Seidlitz*, where (as in *Kronforst*) one party was awarded the entire interest in a pension as part of the property division. *See Seidlitz*, 217 Wis. 2d at 84 ("As part of the equal property division, [wife] was awarded the homestead, a rental property and [husband]'s pension fund."). We rejected the husband's claim that, in deciding whether to grant his motion to terminate maintenance upon his retirement, the trial court should have considered the wife's income from the pension she was awarded in the property division. We noted that the *Kronforst* rule against "double-counting" was "not absolute," *id.* at 90 (citing *Cook v. Cook*, 208 Wis. 2d 166, 180, 560 N.W.2d 246 (1997)), but that the trial court's decision to exclude the wife's payments ·from the pension from consideration in the maintenance determination was "supported by case law." *Id.* at 91. We endorsed the trial court's conclusion that it "cannot count it [the pension] for property division and then also count it as an income stream for maintenance," noting that "a spouse should not be forced to

invade the property division in order to live while the other does not." *Id.* at 91–92 (citation omitted).

¶ 13.  Here, as we have discussed, Diane is not being "forced to invade" property awarded to her in the property division, while Gary is not. Diane did not give up her interest in other property in order to share in the pension, and Gary did not receive other property to offset the pension interest Diane obtained under the QDRO. Rather, both parties preserved a right to share in the future pension payments, according to a division of their interests as of the date of the divorce. Thus, the "counting" of the pension payments in determining whether maintenance should be modified is the *first* time the pension is being counted—not the second. Just as Diane's receipt of pension payments is an appropriate consideration in determining her present financial circumstances, so is Gary's receipt of his pension benefits in determining his. For example, if after Gary retires from his present employer, he obtains other employment or becomes self-employed, a court could properly consider both his earnings and his $1,500 monthly pension benefit in assessing his income for maintenance purposes.

¶ 14.  In short, we conclude that the trial court's order to modify maintenance by allowing an offset for Diane's newly commenced pension payments was a proper exercise of discretion. The court noted that Gary had not shown that his retirement at age fifty-five was medically necessary, and by entering the order it did, it ensured that Diane would not be adversely affected by Gary's voluntary decision to retire—she would still receive some $1,200 per month from the pension and maintenance.[5]

---

[5] According to his testimony at the motion hearing, Gary intends to live exclusively on his pension income following

¶ 15. Finally, we note that among the "double-counting" cases cited by Diane and the trial court is our decision in *Kennedy v. Kennedy*, 145 Wis. 2d 219, 426 N.W.2d 85 (Ct. App. 1988). Both parties in *Kennedy* had pension plans from their respective long-term employers, and we noted that the trial court had "divided the marital estate equally. The court divided the pension plans giving each party an interest in the other's pension plan." *Id.* at 221. The husband appealed the property division and maintenance award ordered in the divorce judgment, asserting "that the immediate value of [wife]'s interest in his pension under the domestic relations order 'should be factored into the equation for either property division and/or maintenance.'" *Id.* at 224. We affirmed the property division, concluding there was no "unfairness" in dividing the parties' pension benefits by a QDRO: "Once the trial court elects to use a domestic relations order for this purpose, the present value of the parties' interest in each others' benefits is thereafter irrelevant to the property division." *Id.* at 225. Our present analysis is

retirement. If Diane continues to work and earn at her previous income level, she will be receiving considerably more monthly income than Gary will following his retirement. (Diane's monthly income would be $2,576, while Gary's would be $1,500 - $1,700. See footnote 3, above.) Gary might therefore argue that he should be relieved of any obligation to pay maintenance. Gary has not cross-appealed the court's order which modified maintenance rather than terminating it, however. In any event, as discussed in the text, we conclude that the decision to not relieve Gary of his obligation to provide the additional amount needed to maintain the previously ordered level of maintenance does not represent an erroneous exercise of discretion.

entirely consistent with this part of our discussion in *Kennedy*.

¶ 16.   Our treatment of the maintenance issue in *Kennedy* was not nearly so straightforward, however. First, we explained early in the opinion that we were reversing the trial court's order for maintenance of $100 per week because "we are left with the nagging question-why $100 per week for an indefinite term is a proper maintenance award under [the maintenance statute] and the facts and circumstances of this case." *Id.* at 223. Because we reversed the maintenance order at the payer's request, and because we were critical of the trial court's "mechanistic approach" of "simply . . . attempting to equalize the post-divorce income between the parties," it can be assumed that we deemed the award too high for the facts and circumstances presented.

¶ 17.   When we returned to the maintenance issue later in the opinion, however, we rejected the husband's "contention that the payments to [wife] from his pension benefits must be 'factored into the equation' in deciding [wife]'s maintenance claim." *Id.* at 227. Perhaps because the wife was immediately eligible to draw benefits while the husband was not (unless he retired, which there was no indication he intended to do), we said:

> Whether or not the periodic distributions to [wife] of her interest in [husband]'s pension benefits under the domestic relations order are income for purposes of taxation, those distributions are, in actuality, payment to her of a part of her share of the marital estate. As such, those payments are not income to her in determining the maintenance issues.
>
>      . . . .

719

> [Wife] should not be obliged to invade or exhaust her property division to support herself if [husband]'s income is sufficient to provide her with maintenance meeting the *LaRocque* objectives of support and fairness.

*Id.* at 226–27.

¶ 18. One obvious distinction between the present facts and those in *Kennedy* is that, given Gary's retirement, both Gary and Diane will be drawing on their respective pension benefits from Gary's employer. That is, if either is "invad[ing] or exhaust[ing his or] her property division," *id.*, both are. Another, closely related, distinguishing fact is that Gary will clearly not be able to keep paying maintenance at the previously ordered level after he retires, if his only income is his pension and some interest on investments, as he testified.

¶ 19. We recognize, however, that the order under review does not require Gary to retire—it simply permits him to do so by reducing his maintenance obligation by the amount of pension income Diane receives under the QDRO. Our affirming the present order might be viewed as in conflict with some of our discussion in *Kennedy*, quoted above. Nonetheless, we are not persuaded that *Kennedy* precludes our present holding. There, we rejected only a contention that certain pension payments "*must be* factored into" the maintenance equation, *id.* at 227 (emphasis added), which is quite different from a conclusion that they may never be.

██

¶ 20. Our present holding is simply this: When an employee-spouse's pension is divided by QDRO, and no value is assigned to either spouse's interest to be offset by other property awarded in the property divi-

sion, a family court is not prohibited by the "double-counting" rule from considering pension distributions in determining maintenance. We concluded in *Pelot v. Pelot*, 116 Wis. 2d 339, 343, 342 N.W.2d 64 (Ct. App. 1983) that "[i]f the present value [of a pension] is included in the estate, then the pension payments themselves are not counted as income for purposes of fixing maintenance when the divorce is granted." Our present holding is simply the corollary—if the present value of a pension is not included in the marital estate for property division purposes, such as when a pension is divided by QDRO as in this case, then the pension payments may be counted as income for purposes of fixing maintenance.

## CONCLUSION

¶ 21.  For the reasons discussed above, we affirm the appealed order.

*By the Court.*—Order affirmed.