IN RE the MARRIAGE OF:

Linda ROHDE-GIOVANNI p/k/a Linda Susan Baumgart, Petitioner-Appellant,†

v.

Paul Albert BAUMGART, Respondent-Respondent.

Court of Appeals

*No. 01–3014. Submitted on briefs August 9, 2002.—Decided June 26, 2003.*

2003 WI App 136

(Also reported in 667 N.W.2d 718.)

† Petition to review granted 10-1-03.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Linda Roberson* and *Megan A. Senatori* of *Balisle & Roberson, S.C.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Stephen C. Beilke* and *Suzanne Lee* of *Murphy & Desmond, S.C.*, Madison.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Linda Rohde-Giovanni appeals an order of the circuit court converting her maintenance award from an indefinite term award to a limited term award expiring December 2003. Linda argues that the circuit court's decision to terminate her maintenance as of December 2003 was error because the court: (1) erroneously found that Linda could live at the marital standard of living without maintenance based in part on the court's failure to consider the expense Linda was incurring for an adult child's higher education when calculating Linda's current standard of living; (2) failed to properly apply the "fairness" objective of maintenance; and (3) erroneously converted Linda's maintenance to limited term maintenance without adequately evaluating the applicable legal test. We disagree with these arguments and affirm.

## Background

¶ 2. Linda Rohde-Giovanni and Paul Baumgart were divorced on August 27, 1992, after nineteen years of marriage. As part of the judgment of divorce, the parties agreed to joint custody and shared physical placement of their three minor children. The original divorce order required Paul to make child support payments with a schedule for support reduction as each child reached age eighteen. Linda and Paul's youngest child turns eighteen in June 2003. In addition, Paul was required to make maintenance payments to Linda in the amount of $950 per month for an indefinite period of time.

¶ 3. On May 31, 2001, Paul moved to terminate or reduce the maintenance award to Linda. In response, Linda moved to increase the maintenance award. The court held a hearing on the parties' motions and the parties presented evidence of their financial circum-

stances at the time of the divorce, currently, and in the interim. At the time of the divorce, Linda was a student pursuing her master's degree in education and working part-time as a group counselor. Since the divorce, Linda has received her master's degree, is working as a teacher, and continues to work part-time as a group counselor.

¶ 4. At the time of the hearing, the parties had one minor child, age sixteen. Linda has an approximate current yearly income of $61,000. Paul remarried and currently earns approximately $105,000 per year. After finding that there had been a substantial change in the parties' financial circumstances, the circuit court converted the maintenance award from an indefinite award to a limited term award, ordering Paul to continue paying $950 a month in maintenance to Linda until December 2003.

### *Discussion*

■■■■

¶ 5. Linda contends that the circuit court's order, that maintenance payments will end December 2003, is improper because the parties' circumstances have not *sufficiently* changed to justify termination of her maintenance award. Whether there has been a substantial change of circumstances sufficient to warrant a modification of maintenance presents a mixed question of fact and law. *Benn v. Benn,* 230 Wis. 2d 301, 307, 602 N.W.2d 65 (Ct. App. 1999). "A circuit court's findings of fact regarding what changes have occurred in the circumstances of two parties will not be disturbed unless they are clearly erroneous. However, the question of whether those changes are substantial is a question of law which we review *de novo.*" *Id.* (citations omitted). Where there has been a substantial change in

circumstances, the subsequent decision whether to modify or terminate a maintenance award is within the discretion of the circuit court. *See Murray v. Murray*, 231 Wis. 2d 71, 77–78, 604 N.W.2d 912 (Ct. App. 1999); *Plonka v. Plonka*, 177 Wis. 2d 196, 200, 501 N.W.2d 871 (Ct. App. 1993).

> We will uphold a trial court's exercise of discretion when the record shows that the court employed a process of reasoning in which the facts and applicable law are considered in arriving at a conclusion based on logic and founded on proper legal standards. We will generally look for reasons to sustain a trial court's discretionary decision.

*Murray*, 231 Wis. 2d at 78 (citations omitted).

¶ 6. We must first consider whether a substantial change in circumstances occurred. "A court may modify maintenance only 'upon a positive showing of a change of circumstances,' which must be 'substantial' and 'relate to a change in the financial circumstances of the parties.' " *Wettstaedt v. Wettstaedt*, 2001 WI App 94, ¶ 6, 242 Wis. 2d 709, 625 N.W.2d 900 (quoting *Johnson v. Johnson*, 217 Wis. 2d 124, 127, 576 N.W.2d 585 (Ct. App. 1998) (*Johnson I*)).

¶ 7. Linda cites to cases suggesting that a substantial change in circumstances cannot exist independent of a finding that the change also warrants modification of the maintenance award. *See Johnson v. Johnson*, 225 Wis. 2d 513, 515 n.2, 593 N.W.2d 827 (Ct. App. 1999) (*Johnson II*) ("In a postdivorce modification petition, the threshold issue is 'whether the parties met their burden of establishing a substantial change in circumstances after the divorce warranting a modification of maintenance.' " (quoting *Johnson I*, 217 Wis. 2d

345

at 128)). To the extent Linda disputes Paul's statement that "the threshold test for determining whether modification of maintenance is warranted is simply whether the parties met their burden of establishing a substantial change in circumstances after the divorce," we agree with Linda; this is not an accurate statement of law. However, courts do treat the question (Is there a substantial change in circumstances?) as a threshold issue and then go on to consider whether such a change warrants modification of the maintenance award. *See Murray*, 231 Wis. 2d at 77–78; *Johnson I*, 217 Wis. 2d at 127; *Gerrits v. Gerrits*, 167 Wis. 2d 429, 437–39, 482 N.W.2d 134 (Ct. App. 1992). In any event, elsewhere in her briefing Linda admits that a substantial change in circumstances has occurred.[1]

---

[1] Similarly, the dissent asserts that we apply the wrong test for determining whether there has been a "change in circumstances warranting a termination of indefinite maintenance." Dissent at ¶ 36. The dissent, relying on *Rosplock v. Rosplock*, 217 Wis. 2d 22, 33, 577 N.W.2d 32 (Ct. App. 1998), asserts that this inquiry "depends on the court's findings in support of the original order and whether circumstances have occurred since that time that would make it unfair or unjust to Paul to continue maintenance." Dissent at ¶ 36. The dissent cites *Rosplock* for the proposition that a "change in circumstances" must be such that it would be "unjust" to hold the payor of maintenance to continued payments. Dissent at ¶ 36. However, this formulation of the question is both inaccurate and so broadly stated as to provide no real standard at all.

First, the part of *Rosplock* relied on by the dissent does not purport to set forth a comprehensive test for the existence of a "substantial change in circumstances," much less one covering when such a change warrants a change in or termination of maintenance. Indeed, *Rosplock* itself only addresses the change in circumstances needed to support consideration of modifying a stipulated limited term maintenance. *See Rosplock*, 217 Wis.

¶ 8. The parties disagree as to whether the substantial change that has occurred warrants the modifi

2d at 32 n.6, 33. *Rosplock*, in turn, relies on *Fobes v. Fobes*, 124 Wis. 2d 72, 81, 368 N.W.2d 643 (1985), also a stipulated limited term maintenance case. *See Fobes*, 124 Wis. 2d at 81 ("Where the payments are according to stipulation, 'the substantial or material change in the circumstances should be such that it would be unjust or inequitable to strictly hold either party to the judgment.'" (quoting *Moore v. Moore*, 89 Wis. 2d 665, 669, 278 N.W.2d 881 (1979) (citations omitted)). The origin of these cases is *Miner v. Miner*, 10 Wis. 2d 438, 103 N.W.2d 4 (1960), which arose in the context of a stipulated agreement: "[W]here the judgment incorporates the provisions of an agreement of the parties in reference to alimony ... the substantial or material change in the circumstances should be such that it would be unjust or inequitable to strictly hold either party to the judgment." *Id.* at 441–42; *see also Van Gorder v. Van Gorder*, 110 Wis. 2d 188, 195, 327 N.W.2d 674 (1983); *Moore*, 89 Wis. 2d at 669; *Murray v. Murray*, 231 Wis. 2d 71, 74, 77, 604 N.W.2d 912 (Ct. App. 1999). Thus, the dissent uproots language in *Rosplock* and plants it in a different context.

The threshold "substantial change in circumstances" test we apply here to an indefinite term maintenance order is the one set forth in a long line of cases including *Wettstaedt v. Wettstaedt*, 2001 WI App 94, ¶ 6, 242 Wis. 2d 709, 625 N.W.2d 900; *Benn v. Benn*, 230 Wis. 2d 301, 308–09, 602 N.W.2d 65 (Ct. App. 1999); *Johnson v. Johnson*, 217 Wis. 2d 124, 127, 576 N.W.2d 585 (Ct. App. 1998) (*Johnson I*); *Haeuser v. Haeuser*, 200 Wis. 2d 750, 764, 548 N.W.2d 535 (Ct. App. 1996); and *Gerrits v. Gerrits*, 167 Wis. 2d 429, 437, 482 N.W.2d 134 (Ct. App. 1992). As we explained in *Gerrits*:

> The general rule is that maintenance will be changed only upon "a positive showing of a change of circumstances." The change must be "substantial," and it "must relate to a change in the financial circumstances of the parties."
>
> [The payor spouse] does not dispute the general rule. Instead, he points to [*Harris v. Harris*, 141 Wis. 2d 569, 415 N.W.2d 586 (Ct.

cation ordered by the circuit court. "When modifying maintenance awards, the circuit court must consider the same factors governing the original determination

App. 1987)] as "distinctly h[olding] that [the payee's] 'need' . . . is the threshold factor for postjudgment maintenance modifications." [The payor spouse] bases that assertion—and his argument—on the following statement in *Harris*: "[The husband] does not argue that he cannot pay more, and the trial court correctly concluded that [the wife] is not entitled to more maintenance simply because [the husband] can pay it." *Id.*, 141 Wis. 2d at 579, 415 N.W.2d at 591.

[The payor spouse] reads *Harris* too narrowly. The case does not, as [the payor spouse] suggests, establish a bright-line requirement that any adjustment of maintenance is conditioned upon a showing of increased need on the payee's part. Rather, it discusses and continues the traditional rules governing maintenance—that its object, either when initially ordered or later revised, *is to maintain the payee spouse in the financial situation enjoyed during the marriage.*

Maintenance is grounded in spousal support obligations long recognized in the law: "the obligation of the supporting spouse to support the other . . . in the manner to which that spouse was accustomed during the marriage." . . . And in *Harris*—a case, like this one, seeking modification of maintenance—we said that "[t]he purpose of any maintenance adjustment is to fulfill the objective of the original judgment, which is to maintain the dependent spouse at the standard of living enjoyed during the marriage."

*Gerrits*, 167 Wis. 2d at 437–38 (citations omitted; emphasis added). Thus, *Gerrits* makes it clear that the dissent employs the wrong test to this non-stipulation/indefinite-term maintenance situation.

At the same time, we acknowledge that the case law on maintenance is not a paragon of clarity and we do not claim to have set forth a comprehensive road map for circuit courts faced with a motion to terminate or reduce maintenance in circumstances comparable to those in this case. If a clear guide exists in the case law, we were not able to discern it. Rather, we have taken the law provided by the parties, supplemented by sub-

of maintenance set forth in sec. 767.26, Stats." *Poindexter v. Poindexter*, 142 Wis. 2d 517, 531, 419 N.W.2d 223 (1988).[2] The circuit court does not have to consider all of these statutory factors, but must "consider those

stantial research of our own, and addressed individual arguments made by Linda challenging the decision of the circuit court. We do not say we would have reached the same decision as the circuit court. Rather, we conclude that Linda has not identified any legal error, we find no legal error, and we do not find a misuse of discretion.

Finally, it is curious that the dissent concludes that because the judge who issued the initial maintenance award anticipated that Linda's earnings would increase, the fact that Linda's earnings did increase "cannot support the legal conclusion of a substantial change in circumstances sufficient to terminate maintenance." Dissent at ¶ 39. We question whether such predictions are relevant to our *de novo* determination of whether a substantial change in circumstances has occurred. *See Benn*, 230 Wis. 2d at 307. Moreover, using this prediction to thwart an adjustment to or the termination of maintenance in this case is odd because the same judge who initially ordered maintenance and anticipated that Linda's income would increase likewise anticipated that such changes might justify a future modification. The judge stated: "[My] analysis becomes outdated once [Linda] earns in accordance with her capacity with completion of her education, and once the child support figures change."

[2] WISCONSIN STAT. § 767.26 (1999–2000) provides:

> Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:
>
> **(1)** The length of the marriage.
>
> **(2)** The age and physical and emotional health of the parties.
>
> **(3)** The division of property made under s. 767.255.

factors which are relevant to the case." *See id.* at 532. These statutory factors "are designed to further two distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective)." *LaRocque v. LaRocque*, 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987).

**(4)** The educational level of each party at the time of marriage and at the time the action is commenced.

**(5)** The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

**(6)** The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

**(7)** The tax consequences to each party.

**(8)** Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

**(9)** The contribution by one party to the education, training or increased earning power of the other.

**(10)** Such other factors as the court may in each individual case determine to be relevant.

All further references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 9. Paul argues that *LaRocque*'s "fairness objective" does not apply to postdivorce modifications of maintenance awards. Paul finds support in *Johnson I*, 217 Wis. 2d 124, which states that the fairness objective "does not apply to a postdivorce situation." *Id.* at 128. However, in *Johnson I* we did not address whether the fairness objective applied to the circuit court's modification of a maintenance award. Rather, we spoke in the context of setting forth the threshold inquiry in a decision whether to modify a maintenance award, that is, whether there has been a substantial change in circumstances after the divorce warranting maintenance modification. *See Johnson II*, 225 Wis. 2d at 515 n.2.

¶ 10. Moreover, the "fairness objective" is a broad "umbrella." *Hubert v. Hubert*, 159 Wis. 2d 803, 821, 465 N.W.2d 252 (Ct. App. 1990). The phrase, as applied to maintenance, has its genesis in *LaRocque*, where the term is simply used to explain that the statutory factors in Wis. Stat. § 767.26 are "designed to further" the two related objectives of maintenance: the support objective and the fairness objective (ensuring "a fair and equitable financial arrangement between the parties in each individual case"). *LaRocque*, 139 Wis. 2d at 32–33. Once a court has determined that a maintenance award must be reassessed because of a substantial change in circumstances, it is nonsensical to assert that the fairness objective does not apply.[3]

---

[3] Relying on *Hubert v. Hubert*, 159 Wis. 2d 803, 465 N.W.2d 252 (Ct. App. 1990), *Johnson I* inexplicably asserts that the "fairness objective" is a "factor focusing on noneconomic contributions made by the spouses 'during the marriage.'" *Johnson I*, 217 Wis. 2d at 128 (citations omitted). *Johnson I*'s reliance on *Hubert* for this proposition is misplaced. *Hubert* merely states

### A. Whether the Circuit Court Correctly Determined That Linda Could Attain Her Marital Standard of Living Without Maintenance Payments

### 1. Whether the Circuit Court Determined that Linda Could Attain her Marital Standard of Living

¶ 11. As a threshold matter, Linda argues that the circuit court did not make a finding that she could attain the marital standard of living. However, a fair reading of the court's comments reveals that it did make this finding. The circuit court stated: "I think if you tighten up your budget[,] . . . you would be living reasonably comparable to that enjoyed during the marriage." The only reasonable reading of these words is that the court believed Linda would be living at the marital standard of living when her maintenance award terminated.

### 2. The Consideration of Linda's Payments for Her Adult Child's Higher Education Expenses

¶ 12. Linda next argues that the circuit court erred by not including her contributions to her adult child's higher education expenses in its assessment of her current standard of living. Linda contends that "it was an expectation of the marriage that the parties would financially contribute to their children's educa-

that the "fairness objective is much broader, it brings under its umbrella all of the noneconomic contributions [of a spouse] made during the marriage." *Hubert*, 159 Wis. 2d at 821. And, as explained above, any assertion that the "fairness objective" *focuses* on noneconomic contributions of a spouse during marriage is contrary to the broad definition given the term in *LaRocque v. LaRocque*, 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987).

tions" and, thus, expenses for her adult child's higher education should be considered in determining whether Linda could attain her marital standard of living. In Linda's view, expenses for higher education should be treated the same as other discretionary expenses that have been incorporated into calculations of the marital standard of living, such as money for substantial savings accounts, *see Hubert*, 159 Wis. 2d at 818, 820–21, vacations or hobbies, *see Johnson II*, 225 Wis. 2d at 518, or charitable contributions, *see Hefty v. Hefty*, 172 Wis. 2d 124, 137, 493 N.W.2d 33 (1992).

¶ 13. Linda points to the following evidence to support her argument that the parties agreed to and expected to pay for higher education expenses: (1) Linda's testimony that paying for their children's higher education was an ethic that the parties shared; (2) Linda's testimony that both parties are highly educated and that Linda believed it was her moral obligation to contribute to her children's higher education expenses; (3) Linda's testimony that she and Paul had discussed supporting their adult children while the children were in school; (4) Linda's testimony that the parties "would help [the children] in whatever way [they] could to launch them as adults"; and (5) Paul's child support proposal at the time of the divorce that recommended funds be set aside for the children's higher education.[4]

---

[4] Linda also argues that both parties submitted budgets listing support for adult children as an expense, including Paul's budgets for June and July 2001. However, Paul's testimony demonstrates that his June and July 2001 budgets included both his and his current spouse's expenses. Paul's revised budget, listing only his expenses, did not include an expense for the support of adult children.

¶ 14. Part of Linda's argument fails because it is contrary to a factual finding made by the circuit court. The court found that, during the marriage, the parties never agreed to pay for their adult children's higher education. Linda has not demonstrated that this finding is clearly erroneous and, therefore, Linda may not rely on the existence of such an agreement as a factual predicate.

¶ 15. Moreover, the situation before us differs from the savings, vacations, hobbies, and charitable contributions cases that Linda relies on. Unlike those cases, there is no evidence that Linda and Paul engaged in saving for college during their marriage. Thus, the limited question before us is whether funding an adult child's post-high school education, where there has been no agreement to do so and where there had been no savings for this purpose during the marriage, is an appropriate factor in setting maintenance.

¶ 16. It is undisputed that the circuit court does not have the power to require Paul to fund his child's higher education once the child reaches the age of majority and graduates from high school. *See Resong v. Vier*, 157 Wis. 2d 382, 389, 459 N.W.2d 591 (Ct. App. 1990) ("[A] court cannot order support payments after the child has reached the age of majority . . . ."). Although case law suggests that trusts may be established for minor children's higher education costs, *see Hubert*, 159 Wis. 2d at 817, "any payments to a trust must be made from child support payments paid while the child is still a minor." *Mary L.O. v. Tommy R.B.*, 199 Wis. 2d 186, 201, 544 N.W.2d 417 (1996).

¶ 17. We conclude that it would be incongruous to allow maintenance for the purpose of providing the payee spouse with money to pay for the education of an

adult child when the child support statutes prohibit such payments as child support. The effect of adopting Linda's position would be to render the child support statute prohibition on such payments meaningless. *See Cepukenas v. Cepukenas*, 221 Wis. 2d 166, 175, 584 N.W.2d 227 (Ct. App. 1998) ("We must construe statutes so as to not render them meaningless."). Accordingly, we affirm the circuit court's refusal to include higher education expenses for an adult child as part of Linda's current reasonable expenses warranting continued maintenance.[5]

### 3. Whether the Circuit Court's Findings on Linda's Ability to Live at Her Marital Standard of Living Were Clearly Erroneous

■■■

¶ 18. Apart from the arguments addressed above, Linda asserts the circuit court erroneously found she could attain the marital standard of living by the time the maintenance term ended. As stated above, the circuit court found that Linda would be self-supporting at the termination of her maintenance. Accordingly, we review the record in the light most favorable to the circuit court's finding to determine whether that finding is clearly erroneous. *See Columbia Stamping &*

---

[5] We acknowledge that our conclusion presents a curious juxtaposition with maintenance payments for hobbies, vacations, and charitable contributions. But we cannot conclude that the legislative scheme is absurd and, in any event, Linda does not make that argument. We only know that when the legislature focused its attention on child support (the topic here), it determined that child support payments are limited only to benefit children who are "less than 18 years old, or . . . less than 19 years old if the child" is pursuing a high school degree or its equivalent. Wis. Stat. § 767.25(4).

*Mfg. Co. v. Reich*, 28 Wis. 2d 297, 301, 137 N.W.2d 45 (1965) ("The evidence must be viewed from the standpoint most favorable to the findings of the trial court."). When we undertake to determine whether a finding is clearly erroneous, rejection is not warranted merely because there is evidence in the record to support a contrary finding. *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983). The contrary evidence, rather, must constitute the great weight and clear preponderance of the evidence. *Id.* at 643–44.

¶ 19. Linda argues that the record demonstrates that she is not living at the marital standard of living. For example, Linda asserts that she was required to liquidate retirement assets to pay for routine living expenses; she could not afford basic repairs to her home; she has to work two jobs in detriment to her health; and she cannot meet her monthly budget. However, the record does not demonstrate that the circuit court's finding was clearly erroneous.

¶ 20. At the hearing, the circuit court received the following evidence regarding Linda's current standard of living and her standard of living prior to the divorce. Linda testified that her food, clothing, and entertainment budgets were all "much less" than they had been during the marriage. Linda testified the house she lives in, the same house Linda and Paul occupied during their marriage, is in a "deteriorated" condition. She said the foundation is cracked, the windows are leaky, the stove and water softener do not work, and the siding is rusting. Linda also testified that, at the time of the divorce, there was only one mortgage on the house and she now has four mortgages on the house. The parties stipulated that Linda's house has an assessed value of $130,000 and her mortgages total $86,000, although at the hearing Linda testified that the house's actual

assessed value was $114,700. The parties also stipulated that, at the time of divorce, Linda's mortgage payment was $690 per month and if she consolidates her current mortgages her monthly payment will be $1,100. However, there is no detailed information about the house's value and mortgage prior to the divorce, making it impossible for the circuit court to make debt and equity comparisons.

¶ 21. During their marriage, Linda and Paul took three trips to Europe, as well as trips to San Francisco, New York, and several trips to Seattle. In the two years prior to the maintenance modification hearing, Linda traveled to the Virgin Islands and to Seattle, as well as a trip to Door County. At the initial divorce hearing in 1992, Linda drove a 1990 minivan. At the 2001 hearing on maintenance modification, Linda owned a 1998 minivan. During the marriage, Linda had savings of $29,809; at the hearing, Linda reported current savings of $94,877, as well as $33,535 in retirement assets.

¶ 22. Since the divorce, Linda has liquidated a comparatively small amount of her assets to pay for legal expenses and living expenses. Linda works a part-time job in addition to her regular teaching position. During the marriage, with four children living at home, Linda did not work outside the home until she took a part-time position two years before the divorce. Linda testified that she currently suffers from health problems and is "exhausted" from working two jobs. Linda pays for her adult son's books and tuition at Madison Area Technical College, as well as for some of his other expenses, including his car. Linda currently budgets $936 per month to pay for her adult son's expenses. The parties stipulated that the cost of living has increased by 26.33% since the time of the divorce.

¶ 23. The circuit court commented that if Linda "tighten[ed] up [her] budget," referring to her expenses for her adult son's tuition and living expenses, she would be living at the marital standard. We cannot say that this finding is clearly erroneous. So far as the record discloses, it was reasonable for the circuit court to find that Linda drives a comparable car, takes comparable vacations, and lives in a comparable house. Although Linda testified that the house needs repairs, the hearing testimony did not provide the circuit court with specific information allowing comparison. For example, there is no evidence of the house's condition at the time of divorce, and there is insufficient evidence of the cost of currently needed repairs to permit an assessment of how such costs would affect Linda's monthly budget. Linda's debt has increased, but at the same time her savings have increased, despite losing money in the recent stock market downturn. There is no comparison evidence of the couple's debt level during marriage. Although Linda claims that her budgets for food, clothing, and entertainment are "much less" than before her divorce, she does not specify the disparity, and it is unclear whether her budget for such items is less because over $900 of her monthly budget is used to support her adult son.

¶ 24. Linda also contends that the circuit court ignored evidence that she was forced to work two jobs in detriment to her health. However, we find no indication that the circuit court ignored this evidence. The circuit court need not comment on every piece of evidence in the record. Moreover, apart from Linda's vague statement that working two jobs was against her doctor's advice, there is no evidence that Linda's health affected her ability to support herself. And, there was no testi-

mony that Linda worked less in the home during the marriage than she now works outside the home.[6]

¶ 25. Therefore, we conclude that the circuit court's finding that Linda could attain the marital standard of living by December 2003 was not clearly erroneous.

### B. The Fairness Objective

¶ 26. Linda separately argues that reversal is required because the circuit court failed to properly apply the "fairness objective" of maintenance. Linda's "fairness objective" argument has three components.

¶ 27. Linda contends that the circuit court improperly considered Paul's reduced standard of living immediately after the divorce. Linda bases her argu-

---

[6] Although not disputed or addressed by Linda or Paul, we observe that a party seeking a modification of a maintenance award bears a threshold burden: proving the existence of a substantial change in circumstances. *Haeuser*, 200 Wis. 2d at 764. Further, the parties do not discuss the evidentiary burden after one party has made this threshold showing. In this case, by the time of the hearing both parties were seeking a change in the maintenance award (Paul sought termination and Linda sought an increase) and both parties presented evidence. Our comments that the evidence does not support certain arguments made by Linda, such as her assertion that her house needed more repairs or that she was in poorer health than at the time of the divorce, are not meant to suggest that Linda had a burden to produce evidence and failed to do so. Rather, we are only saying that the record does not support certain arguments by Linda. Linda does not phrase her arguments in terms of burden of proof and has not suggested, for example, that Paul failed to meet his burden to prove that the home's current condition and Linda's current health are comparable to what they were at the time of the divorce. To repeat, we have not addressed this burden issue because the parties have not briefed it.

ment on the circuit court's comments that immediately after the divorce Paul lived in a less desirable part of town and at a reduced standard of living. However, even assuming that the reduced standard of living experienced by Paul immediately after the divorce is irrelevant for purposes of deciding whether Paul should continue to pay maintenance, no fair reading of the record supports the inference that the circuit court relied on this consideration. The circuit court's comments were made in the context of recounting the events that occurred in this case, including the fact that Linda received the marital home as part of the divorce decree. There is no suggestion that the court relied on this factor when deciding to terminate maintenance.

¶ 28. Also under the rubric of "the fairness objective," Linda asserts the circuit court erred by failing to consider the standard of living the parties could have anticipated enjoying if they had stayed married. For legal support, Linda relies on *Hefty*, where this court held that a circuit court addressing maintenance should consider not only the standard of living experienced during marriage, but also any improved standard of living the parties could reasonably have anticipated if they had stayed married. *Hefty*, 172 Wis. 2d at 134. However, we do not address the application of *Hefty* to this case because Linda's argument lacks factual development. Neither in the circuit court nor in this court does Linda develop factually the standard of living she could have reasonably anticipated if she and Paul had remained married.

¶ 29. Finally, Linda argues that the fairness objective is a stand-alone consideration that applies regardless whether the payee spouse is self-supporting at the marital standard of living and, therefore, the circuit court erred by not looking at Paul's higher standard of

living, even if Linda could attain the marital standard of living by the end-date of maintenance. The best authority Linda provides for this argument is language in *Hefty*. However, *Hefty* simply defines "marital standard" to include "the lifestyle that the parties could **anticipate** enjoying if they stayed married." *Id.* at 134. Linda does not provide authority, and we do not find any, for the proposition that fundamental fairness requires a circuit court to consider ordering continued maintenance when the payee spouse is living at or above the marital standard. *See Johnson II*, 225 Wis. 2d at 519 ("A payee spouse is not entitled to maintenance allowing a lifestyle above and beyond the predivorce standard of living."); *Gerrits*, 167 Wis. 2d at 442–43 (vacating award based on payor's ability to pay and remanding case for redetermination of the amount necessary to maintain payee spouse at the marital standard); *Harris v. Harris*, 141 Wis. 2d 569, 579, 415 N.W.2d 586 (Ct. App. 1987) (noting that circuit court correctly concluded that payee spouse was not entitled to more maintenance simply because payor spouse can afford to pay more). More specifically, Linda has not provided authority, and we find none, for the proposition that the fairness objective requires increased or continued maintenance owing to the fact that the payor spouse enjoys a higher standard of living relative to the marital standard, where the payee spouse is able to live at or above the marital standard without maintenance payments.

*C. Whether the Circuit Court Erred By Not Consider-
ing the Appropriate Factors Before Converting the
Award From an Indefinite Award to a Limited
Term Award*

¶ 30. Linda argues that the circuit court commit-
ted an error of law by converting "the indefinite term
award to a limited term award without evaluating
whether [Linda] met the qualifications for limited term
maintenance." When a circuit court decides whether to
grant limited term maintenance, the circuit court must
consider these three factors:

(1) " 'the ability of the recipient spouse to become
 self-supporting by the end of the maintenance
 period at a standard of living reasonably similar
 to that enjoyed before divorce' ";

(2) " 'the ability of the payor spouse to continue the
 obligation of support for an indefinite time' ";
 and

(3) " 'the need for the court to continue jurisdiction
 regarding maintenance.' "

*Bentz v. Bentz*, 148 Wis. 2d 400, 406, 435 N.W.2d 293
(Ct. App. 1988) (quoting *LaRocque*, 139 Wis. 2d at 41).

¶ 31. Regarding the second factor, Linda argues
that the circuit court failed to adequately consider
Paul's ability to continue to pay maintenance because
the court did not take Paul's current wife's income into
consideration or the fact that Paul would have in-
creased disposable income at the end of the mainte-
nance period because he would no longer be paying
child support. However, all of Linda's arguments in this

362

regard are based on the assumption that she would not be living at the marital standard at the conclusion of the maintenance period.

¶ 32. Although we assume without deciding that the factors listed in *Bentz* apply to the conversion of an indefinite award to a limited term award, we need not determine whether the circuit court considered all of the factors because, as explained above, the court found that Linda would be self-supporting at the marital standard at the end of the maintenance period and, under that circumstance, it was within the court's discretion to terminate maintenance. *See Bentz*, 148 Wis. 2d at 406–07 (considering only circuit court's finding that payee spouse would become self-supporting at marital standard); *see also Murray*, 231 Wis. 2d at 83 ("[J]ust because the payor has achieved a position that enables him or her to live a richer lifestyle than that enjoyed during the marriage does not mean that the payee may share this lifestyle as well through maintenance.").

### *Conclusion*

¶ 33. For all of the reasons discussed above, we conclude that the circuit court's decision to terminate maintenance was an appropriate exercise of discretion.

*By the Court.*—Order affirmed.

¶ 34. ROGGENSACK, J. (*dissenting*). As I read the circuit court's discussion that led to its order terminating maintenance, as well as the majority opinion of this court, a question nagged at me: What change in circumstances makes it unjust or inequitable to Paul to continue maintenance? Because the majority

opinion does not address this question, which is a legal issue and is dispositive of this appeal, I respectfully dissent.

## Standard of Review.

¶ 35. Whether there has been a substantial change in circumstances is a mixed question of fact and law. *Rosplock v. Rosplock*, 217 Wis. 2d 22, 32–33, 577 N.W.2d 32, 37 (Ct. App. 1998). The circuit court's findings of historic fact will not be overturned unless they are clearly erroneous. *Id.* at 33, 577 N.W.2d at 37. We review *de novo* whether a substantial change in circumstances has occurred. *Id.* A substantial change in circumstances sufficient to change an award for indefinite maintenance set out in a divorce judgment should be a change that causes it to be " 'unjust or inequitable to strictly hold either party to the judgment.' " *See id.* (citation omitted).

## Maintenance Termination.

¶ 36. Whether the facts presented show a change in circumstances warranting a termination of indefinite maintenance depends on the court's findings in support of the original order and whether circumstances have occurred since that time that would make it unfair or unjust to Paul to continue maintenance. *See id.* The majority opinion affirms the termination of maintenance without addressing this issue, which I conclude is required under *Rosplock* and *LaRocque v. LaRocque*, 139 Wis. 2d 23, 40, 406 N.W.2d 736, 743 (1987). In evaluating the termination of indefinite maintenance, we must begin with the circumstances as found at the time of divorce. WIS. STAT. § 767.32(1) (2001–02).

### 1. Divorce Judgment.

¶ 37. The circuit court that conducted the trial on the issue of maintenance when the divorce was granted made the following findings that are relevant to our review of the subsequent order terminating an award for indefinite maintenance: (1) During the nineteen-year marriage, Linda was primarily responsible for the care of the four children. (2) Paul provided financial support for the family, as he pursued his career development. (3) Indefinite term maintenance was appropriate because "[t]he time that Ms. Baumgart spent between the birth of Mariah in 1979 and April 1990 taking care of home and children, *permanently [affected]* her ability to generate the sort of earning capacity that Mr. Baumgart was free to generate." Findings of Fact, ¶ 33 (emphasis added). (4) It was anticipated that Linda would return to school as her child-care responsibilities lessened and that she could earn $40,000 per year from full-time employment after completing her education. (5) "[H]er earnings alone are unlikely to leave her self supporting to the degree that would permit her to live in a manner reasonably comparable to that enjoyed during the marriage *now or in the future.*" *Id.*, ¶ 36 (emphasis added). (6) Paul earned $7,700 per month and Linda earned $734 per month. The court ordered Paul to pay $950 per month as maintenance and $1,890 per month as child support.

### 2. Motion to Terminate Indefinite Maintenance.

¶ 38. When the circuit court heard Paul's motion to terminate maintenance, Paul had gross earnings of $8,333 per month and Linda had gross earnings of $4,834, a significant difference despite Linda's efforts at increasing her earning capacity. In addition, Paul's child support obligation of $1,890 per month was terminat-

365

ing; he had married a woman who earned $6,333 per month and her income covered half of his household expenses. Linda continued to maintain a household for their children, even though all would soon be legally adults.

¶ 39. In affirming the termination of indefinite maintenance, the majority opinion focuses primarily on two facts: (1) Linda has increased her earnings since divorce[1] and (2) Linda uses some of her income to help support their children who are older than eighteen years of age. The first factor, her increased earnings, cannot support the legal conclusion of a substantial change in circumstances sufficient to terminate maintenance. The divorce court, in its findings of fact, took into account her anticipated increase in earnings when it ordered indefinite term maintenance, rather than limited term maintenance. This is not a case where Linda achieved financial growth in an unexpected amount.

¶ 40. The second factor regards how Linda spends the money available to her and has nothing to do with whether the continuation of maintenance is unjust or inequitable to Paul. Maintenance, unlike child support, is a payment that carries no directive on how the recipient spouse is to use it. However, the majority opinion equates the financial assistance Linda gives to the parties' adult children with ordering Paul to pay child support for them. This view has no basis in law, and the majority's reliance on *Resong v. Vier*, 157 Wis. 2d 382, 459 N.W.2d 591 (Ct. App. 1990), is misplaced.

¶ 41. *Resong* addressed child support payments where the recipient had erroneously been ordered to

---

[1] The majority opinion ignores Paul's increase in income and marked decrease in expenses, as did the circuit court.

place part of each child support payment in savings for the child's education after the child reached the age of majority. *Id.* at 391, 459 N.W.2d at 594. It had nothing to do with the choices a payee may make in regard to maintenance payments received. Furthermore, while the majority's reasoning may be understandable for a recipient spouse who has no income, it can have no validity for Linda, who works both a full-time and a part-time job for the money that her household requires. Therefore, if she chooses to help their children rather than spending $500 per month on clothes as Paul says he does, that certainly is not unjust or inequitable to Paul.

¶ 42. Furthermore, it appears that the court gave little or no weight to Linda's contribution to raising the parties' children for nine years after the marriage ended, while Paul continued to pursue his career both in and out of the state. That Paul contributed to them in a financial manner and with parenting when he was within the state is undisputed, but the court gave him a good deal of credit for that. However, Linda's service contributions are every bit as valuable as Paul's financial contribution, though much harder to value in a dollars and cents perspective. *See LaRocque*, 139 Wis. 2d at 38, 406 N.W.2d at 742. There is unfairness to Linda in the lack of value placed on her continued commitment to the family, and the failure to recognize that but for her twenty-nine year commitment to caring for the parties' children, it may have been she who had an earning capacity of $106,000 per year, rather than Paul.

¶ 43. And finally, this is not a case where the modest amount of maintenance paid, when compared with Paul's earnings and expenses, is a financial hardship on him. Accordingly, because the majority opinion

does not recognize that while there have been many changes in circumstances that have affected Paul and Linda since their divorce, they were anticipated by the circuit court at the time of divorce and none are of a type that cause the continued payment of maintenance to be unjust or inequitable to Paul, I conclude there has been no substantial change in circumstances sufficient to terminate maintenance. Therefore, I respectfully dissent.