COURT OF APPEALS
DECISION
DATED AND FILED

May 12, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP1568**

**STATE OF WISCONSIN**

Cir. Ct. No. 2008FA463

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE MARRIAGE OF:

ROBERT LEESON WILSON,

PETITIONER-RESPONDENT,

V.

JANET MARIE COSGROVE,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Janet Cosgrove appeals from a postdivorce order that terminated her ex-husband Robert Wilson's obligation to pay her maintenance.  Cosgrove challenges both the circuit court's legal conclusion that there had been a substantial change in circumstances since the last maintenance order and its exercise of discretion in deciding that termination was warranted. We affirm.

## BACKGROUND

¶2    The facts relevant to our review do not appear to be disputed.[1]  The parties separated in 2009 and divorced in 2010, following a 31-year marriage. During the marriage, Wilson completed medical school and a residency and then worked as a cardiologist, while Cosgrove gave up her career as a nurse in order to raise the parties' children and maintain the family home.  By the time of the separation, Wilson was earning $300,000 per year plus bonuses, and Cosgrove had not worked for about 30 years but was attributed an earning capacity of $30,000 a year.

¶3    The circuit court incorporated into the divorce judgment a Legal Separation Agreement (LSA) reached by the parties.  Under the agreement, the parties equally divided a $2.3 million marital estate, and Wilson was to make biweekly maintenance payments to Cosgrove of $4,846 (which would equate to $10,500 a month), plus 42% of all bonuses Wilson received, for an indefinite period of time, terminable upon Cosgrove remarrying.  The parties further agreed

---

[1]  Cosgrove disputes whether it is appropriate to consider facts about the parties' financial situation in 2019 that were not the subject of explicit findings by the court commissioner at that time, but she does not dispute that evidence of those facts was introduced in 2024.

that it would be "reasonable" for Wilson to retire at age 64 and that the court would be able to review both the amount and duration of further maintenance in the event that Wilson were to retire or reduce his workload.

¶4      The amount of maintenance was modified several times over the ensuing years as Wilson's income fluctuated.  In 2019, when Wilson was 66 years old, maintenance was modified to biweekly payments of $3,231 (which would equate to $7,000 a month), plus an annual payment of 42% of any salary Wilson received beyond his anticipated base salary and 30% of any bonuses Wilson received.  At that time, Wilson was opening a new practice and transitioning to part-time work with an anticipated annual base salary of $200,000, while Cosgrove was earning $117 per month as a yoga instructor and drawing $1,239 each month in mutual fund dividends.  Neither party was yet collecting Social Security, although each was eligible to do so.

¶5      In 2023, when he was 70 years old, Wilson filed the motion to terminate maintenance that is the subject of this appeal.  Since the 2019 maintenance order, Wilson had further reduced his work schedule to two days a week, resulting in a base salary of $162,500.  However, with the addition of $4,583 a month in Social Security payments, Wilson's income had actually increased to $217,496 a year.  Wilson had not needed to draw upon any of his investments to pay living expenses.  Wilson's financial adviser projected that Wilson and his second wife could have $5.9 million in their portfolio by the time Wilson was 92, based upon an assumption of consistent returns of 6.38%.

¶6      Meanwhile, Cosgrove had begun drawing $1,142 a month in Social Security income.  Cosgrove had also increased her investments by $377,557 since the 2019 maintenance order and was earning an average of $971 a month in

dividends and interest from a portfolio that was by then worth $2,636,150. Cosgrove's financial adviser testified that, based upon a 2024 analysis, Cosgrove had an 86% probability of being able to pay her living expenses to age 94 based upon her investment portfolio and Social Security income, assuming a monthly budget of $9,000, and she could still have over $2 million in assets at that time based upon a projected consistent return of 5.6% on her investments.

¶7    The circuit court concluded that Wilson's further reduction of his work schedule and base pay constituted a substantial change in circumstances, as contemplated by the parties' stipulation in the LSA. The court then determined that Cosgrove had accumulated sufficient assets, property and income to meet her expenses without maintenance. It also concluded that it would be fair to terminate maintenance, given that Wilson had already worked well beyond his contemplated retirement age while Cosgrove had not worked during those years.

## DISCUSSION

¶8    A circuit court may modify a maintenance award when the movant demonstrates a substantial change in the circumstances of the parties. WIS. STAT. § 767.59(1c)(a)1., (1f)(a) (2023-24).[2]  We will uphold a circuit court's factual findings regarding what changes have occurred since the entry of the last maintenance order unless they are clearly erroneous, but we independently determine as a question of law whether those changes constitute a substantial change in circumstances. *Rohde-Giovanni v. Baumgart*, 2003 WI App 136, ¶5, 266 Wis. 2d 339, 667 N.W.2d 718.  Once a substantial change in circumstances

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

has been established, we will sustain the court's exercise of discretion in deciding whether to modify or terminate maintenance so long as the court reasonably discussed and applied the proper standard of law to the facts of record. *Id.*

¶9 Here, the circuit court's findings regarding changes in the parties' income and investment portfolios since the last maintenance order were supported by testimony and exhibits produced at the 2024 hearing. Those findings are not clearly erroneous, and they do not contradict any findings made in support of the prior maintenance order.

¶10 Cosgrove contends that the circuit court erred by concluding that Wilson's reduced workload and base pay constituted a substantial change in circumstances because: (1) Wilson had already reduced his workload when the 2019 maintenance order was issued; and (2) Wilson's income had actually increased in the intervening period, when taking Social Security income into account.

¶11 We disagree that Wilson was limited, under the parties' stipulation, to relying on a reduction in his workload only once to show a substantial change in circumstances. Nothing in the parties' stipulation indicates such a limitation. Rather, the stipulation appears to contemplate that Wilson could reduce his workload over time, as he did here, *eventually* reaching a point where the parties' originally agreed-upon maintenance could end.

¶12 Moreover, even without the stipulation, Wilson would have the opportunity under WIS. STAT. § 767.59(1f)(a) to demonstrate that a further reduction in his hours was significant enough to qualify as a substantial change in circumstances. Here, while it is true that Wilson had actually increased his income since the last order by drawing upon Social Security, so had Cosgrove. In

addition, Cosgrove had substantially increased her investment portfolio since the last maintenance order was entered. We conclude that the combined facts that Wilson had further reduced his workload, that both parties had begun drawing Social Security, and that Cosgrove had substantially increased her investment portfolio established a substantial change in the parties' circumstances.

¶13 Cosgrove next argues that the circuit court failed to give proper consideration to the twin objectives of fairness and support when exercising its discretion to terminate maintenance. *See **Rohde-Giovanni v. Baumgart***, 2024 WI 27, ¶30, 269 Wis. 2d 619, 676 N.W.2d 452. Cosgrove's disagreement with the court's view of those factors does not mean that the court did not properly consider them, however. To the contrary, the court rationally explained why it believed that: (1) maintenance was no longer needed to advance the support objective, based upon Cosgrove's portfolio; and (2) fairness did not require continued maintenance after Wilson had already worked six years beyond the age when the parties had agreed it would have been reasonable for him to retire.

¶14 This is not a situation such as ***Heppner v. Heppner***, 2009 WI App 90, ¶10, 319 Wis. 2d 237, 768 N.W.2d 261, where the circuit court *preset* a four-year limited term of maintenance without considering whether the dependent spouse could realistically achieve a standard of living comparable to that enjoyed by the parties during the marriage within that time frame. Rather, here, the court considered whether Cosgrove had already achieved a standard of living reasonably comparable to that enjoyed during the marriage and would be able to maintain it. Cosgrove's contention that the court should have given more weight to her arguments that she had contributed to Wilson's career to the detriment of her own, and that she could not enjoy the standard of living she could have anticipated if the parties had not divorced without invading her assets, amounts to little more than

an attempt to have this court substitute our judgment for that of the circuit court as to what was fair under the circumstances. We will not do so. We conclude that the circuit court's decision was reasonably within its discretion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.